O'Malley vs. Ruddy.

O'MALLEY, Appellant, vs. RUDDY, imp., Respondent.

$\begin{array}{cc} \overline{79} & 147 \\ 104 & 662 \end{array}$

*February 7 — February 24, 1891.*

*Reformation of mortgage to include homestead: Note by married woman.*

1. If a mortgage given by husband and wife, and intended to cover their homestead, by mistake describes a different tract of land, it cannot be reformed, in an action for that purpose after the death of the husband, so as to cover the homestead, even with the consent of the widow, who has continued to live therein. Her consent to such reformation is not equivalent to her signing a mortgage of the homestead, required by sec. 2203, R. S., in order to make it valid.

2. Although the note secured by such mortgage is signed by both husband and wife, yet, if given for supplies for the support of the family, it is the debt of the husband alone, and not binding upon the wife, in the absence of proof that she had a separate estate.

APPEAL from the Circuit Court for *Dane* County.

The defendants are the widow and children of Austin Ruddy, who died intestate in Dane county, Wisconsin, in 1882. In 1872 he and his wife, the defendant *Mary Ruddy*, joined in the execution of a mortgage on forty acres of land in that county, given to secure the payment of a note for $132.50, also executed by both of them. The note was given for money advanced and supplies furnished, all of which were intended and used for the support and maintenance of Austin Ruddy and his family. Austin Ruddy then owned forty acres of land in said county. It was the intention of all the parties thereto that the mortgage should cover such forty acres, but by mistake the description of another forty-acre lot was inserted therein instead. The lot so intended to be mortgaged was occupied by Austin Ruddy, with his family, as his homestead, when the mortgage was executed, and continued to be so occupied until his death, and by his widow ever since. The mistake in the mortgage was not discovered until 1889, when the

plaintiff commenced this action for the purposes of reforming the mortgage by inserting therein a description of the homestead as the land mortgaged, and to foreclose the mortgage as reformed.

The defendant *Thomas Ruddy* answered the complaint, and resisted the reformation of the mortgage. The defendant *Mary Ruddy*, widow of Austin, also answered, confessing the allegations in the complaint, and expressing a desire that the relief prayed be granted. None of the other defendants answered. The court found the fact substantially as above stated, and, as conclusion of law, that the answering defendant, *Thomas Ruddy*, was entitled to judgment dismissing the complaint with costs. Judgment was ordered and entered accordingly, from which plaintiff appeals.

For the appellant there was a brief by *Bashford, O' Connor & Polleys*, and oral argument by *R. M. Bashford*. They contended that the mortgage sought to be reformed was intended to cover the homestead and may be corrected so as to cover it. This case is clearly distinguishable from *Petesch v. Hambach*, 48 Wis. 443, the mortgage being for a joint liability of husband and wife. The widow is liable upon the note (*Krouskop v. Shontz*, 51 Wis. 204; *Kavanaugh v. O'Neill*, 53 id. 101), and she consents to the reformation. The conveyance of a homestead by the husband alone is not absolutely void, but may be rendered operative as against the wife by her subsequent consent. *Godfrey v. Thornton*, 46 Wis. 677; *Hamar v. Medsker*, 60 Ind. 416; *Carper v. Munger*, 62 Ind. 481. The decision in *Conrad v. Schwamb*, 53 Wis. 372, practically overrules that announced by LYON, J., in *Petesch v. Hambach, supra*.

*H. W. Chynoweth*, for the respondent, contended that this mortgage amounted only to an executory contract to mortgage, which did not bind the wife and could not be specifically enforced against her. She has no power as to the homestead except to sign her husband's deed or mortgage.

O'Malley vs. Ruddy.

LYON, J. The proposition maintained by counsel for plaintiff, and which covers the whole case, is that, "in order to carry out the original intention of the parties, the error of description in the mortgage may be corrected so as to embrace the homestead, the husband being dead and the widow consenting thereto; especially as the consideration for the mortgage was the joint indebtedness of the husband and wife."

The above proposition contains two statements or assumptions of fact which require consideration. One is that the widow of Austin Ruddy consents to such reformation. It is true that she does so in her answer, but this is not an effectual consent. Sec. 2203, R. S., provides that "no mortgage or other alienation by a married man of his homestead, exempt by law from execution, shall be valid or of any effect as to such homestead without the signature of his wife to the same." Hence no valid conveyance of his homestead can be made by a husband unless his wife signs the same. The widow of Austin Ruddy has not signed any such conveyance, and her answer admitting that the mortgage in suit ought to be reformed to include the homestead is not equivalent to such signing. Of course, she may now lawfully convey to the plaintiff, or any other person, her interest in the homestead; but such a conveyance would not affect the rights of the children and heirs of Austin Ruddy, to whom the reversionary interest therein has descended.

The other fact assumed in the above proposition is that the mortgage was given to secure the joint indebtedness of the husband and wife. The proofs do not sustain this assumption. True, Mrs. Ruddy signed the note, to secure which the mortgage was given, with her husband, but the note was for money and supplies furnished to be used, and which were used, for the support and maintenance of Austin Ruddy and his family. Such support and maintenance was

a legal charge against Austin Ruddy alone, and his wife could not bind herself to pay therefor, unless she had a separate estate or business. There is no proof or claim that she had either. She was therefore under the common-law disability of coverture, and hence her signature to the note did not create an indebtedness against her. The cases determined by this court in which it is so held are quite numerous, and entirely uniform. Some of them are cited in the opinion by Mr. Justice CASSODAY in *Krouskop v. Shontz*, 51 Wis. 204. In all the cases in this court cited by counsel to maintain the opposite doctrine the wife had a separate estate or business. It must be held that the mortgage debt was the debt of Austin Ruddy alone.

The admission of the widow that the plaintiff is entitled to the relief demanded, and the claim that she is liable for the mortgage debt, being thus eliminated from the case, the question for determination is, Can the mortgage be reformed to include the homestead, as the parties to it intended it should, the same having been the homestead of Austin Ruddy when the mortgage was executed, and continuously remaining such until he died, and having been the homestead of his widow ever since? On the authority of *Petesch v. Hambach*, 48 Wis. 443, which is like this case in every essential particular, this question must be answered in the negative. There, as here, an attempt was made by husband and wife to mortgage their homestead, but by mistake the homestead lot was not included in the mortgage. The husband afterwards died, and his widow succeeded to his estate, including such homestead, as heir or devisee. The lot remained the homestead of the parties until the husband's death, and of the wife from that time until the date of judgment. The fact last stated does not clearly appear in the report of the case, but the record shows that the circuit court so found, and the accuracy of the finding was unchallenged. The relief demanded was the same as that demanded here. The

circuit court refused to reform the mortgage, and this court, on appeal, affirmed the ruling. We seldom find two cases, entirely independent of each other, so essentially alike in their facts.

It is quite true that the decision in *Petesch v. Hambach* was by an equally divided court, but until overruled it is authority in this court. See *Lathrop v. Knapp*, 37 Wis. 307. The court has not yet overruled, and is not now prepared to overrule, it. To do so at this late day might divest or disturb property rights acquired on the faith of it. It should be left to the legislature to enact a different rule, if it is deemed desirable to change the rule.

*Conrad v. Schwamb*, 53 Wis. 372, is not in conflict with *Petesch v. Hambach*. In *Conrad v. Schwamb*, the mistake occurred in a deed which was intended to convey a homestead, but which failed to do so. The purchaser went into possession of the homestead under the deed, and the grantors and their family removed to Minnesota, where the husband died eight years later. The widow and family continued to reside in that state. The propositions decided in that case are accurately stated in a head-note as follows: "A deed executed by husband and wife which, though otherwise complete, fails through a misdescription to convey the land intended, being the grantors' homestead, must be treated as an executory contract by the husband to convey, which equity will enforce, after the homestead right ceases against the husband (or against his heirs after his death intestate), though not against his widow." The controlling difference between these two cases is that in one of them the homestead intended to be mortgaged remained a homestead from the execution of the mortgage until the trial, while in the other the premises permanently ceased to be a homestead on the execution of the deed. Because the homestead character continued in the one case, as it does in this case, reformation of the mortgage was denied, and

because it had terminated in the other case the deed was reformed as to the heirs. It is manifest that there is no conflict in the cases.

For the reasons above suggested, the circuit court properly refused to reform the mortgage, and the judgment must be affirmed.

*By the Court.*— Judgment affirmed.