Bartz, Appellant, vs. Eagle Point Mutual Fire Insurance Company of Chippewa County, Respondent. [Two cases.]

*April 1—June 24, 1935.*

*Alexander Wiley* of Chippewa Falls, for the appellant.

For the respondent there was a brief by *Larrabee & Larrabee* of Chippewa Falls, and oral argument by *Orrin H. Larrabee.*

The following opinion was filed April 30, 1935:

ROSENBERRY, C. J.    Prior to December 3, 1926, A. C. F. Bartz, father of the plaintiff, owned and was in sole posses-

sion of the premises in question, being a forty-acre tract upon which there were two sets of buildings not within the incorporated limits of any village or city.  A. C. F. Bartz and his wife in the year 1926 entered into arrangement with two of their sons by which the sons were to purchase the premises of the father for $15,000.  One thousand dollars was paid down, and a little later the plaintiff purchased the interest of his brother, and went on with the performance of the contract.  The transaction was oral; no writing having ever been entered into between the parties.  The father and mother moved into the smaller of the two houses, the larger of the two houses was occupied by the plaintiff, and on December 3, 1926, the defendant company issued to the plaintiff its policy of insurance.

The trial court was of the view that, under sec. 235.01, which provides that no mortgage or other alienation by a married man of his homestead exempt by law from execution or any interest therein, legal or equitable, present or future, by deed or otherwise, without his wife's consent evidenced by her act of joining in the deed, mortgage, or other conveyance, shall be valid or of any effect whatever; that the plaintiff had no title to the premises.  *Rosenthal v. Pleck,* 166 Wis. 598, 166 N. W. 445; *O'Malley v. Ruddy,* 79 Wis. 147, 48 N. W. 116; *Gotfredson Brothers Co. v. Dusing,* 145 Wis. 659, 129 N. W. 647; *Eaton Center Co-op. Cheese Co. v. Kalkofen,* 209 Wis. 170, 177, 244 N. W. 620.  It is considered that the trial court correctly reached this conclusion.  It is undisputed that the premises were a homestead at the time the transaction was entered into.  It is also undisputed that the father and mother continued to reside upon the forty-acre tract in question down to and including the time of the fire.

The statute is a very drastic one, was enacted for the purpose of protecting the interest of a wife in her home, and to prevent its alienation by any act of her husband or her own

except as provided in the statute. It cannot be held merely because the defendant is an insurance company that the oral transaction had any effect whatever upon the relation of the parties to the title of the premises in question. The policy contained a clause to the effect that it shall be void—

"(a) If the interest of the insured be other than unconditional and sole ownership, or (b) if the subject of insurance be a building on ground not owned by the insured in fee simple."

The trial court correctly held that the plaintiff was not entitled to enforce his oral agreement on the ground that an equitable estoppel was created as was held in *Krueger v. Groth,* 190 Wis. 387, 209 N. W. 772. In that case the parties who were held to be estopped had abandoned the homestead. There was no abandonment of the homestead in this case nor any attempt to abandon it.

Action No. 1 was brought to recover $3,300 on a fire insurance policy issued to the plaintiff on November 23, 1931, for the term of five years, insuring certain personal property. The insured property was destroyed by fire on February 8, 1933, and exceeded in value the amount of the insurance. Defendant claims it is not liable for the insurance because of plaintiff's failure to pay the assessment made August 1, 1932, of which notice was given October 1, 1932. The policy was issued under the provisions of ch. 202, Stats. 1931. Sec. 202.11, Stats. 1931, provides:

"(1) When the amount of any loss shall exceed the funds on hand the president shall convene the board of directors who shall make an assessment upon all property insured at the time of the loss. The board may assess up to three and a half mills even if such loss should not require such an amount. The board may also levy an assessment at any time for the purpose of carrying on the business of the company.

"(2) When any assessment shall have been completed the secretary shall immediately insert a notice in one or more newspapers printed in the county or counties where the cor-

poration is doing business, stating the amount of the assessment, the time such assessment was levied, and the time when the same becomes due. . . . The secretary shall also notify every member by mail of the rate per cent of such assessment, and the sum due from him, and the time when due, and to whom payment is to be made, which time shall not be less than thirty nor more than sixty days from the date of such notice. . . .

"(5) Every member who shall fail to pay his assessment within the time specified in the notice sent to him, shall pay to such corporation a fine of two per cent of the amount of such assessment for each week or part thereof during which the same shall remain delinquent, and no payment shall be made by the company upon the policy of any member if at the time he shall suffer a loss he shall be in default and shall have failed to pay his assessment prior to the expiration of thirty days from the time limited in said notice."

The plaintiff contends that in many enumerated particulars the resolution adopted by the board of directors and the notice given pursuant thereto failed to comply with the statute. The resolution adopted August 30, 1932, was as follows:

"Be it resolved by the Board of Directors of the Eagle Point Mutual Fire Insurance Company that their Sec'y levy an assessment of four and one half mills on a dollar on all insurance issued by said Company that will be in force Oct. 1st 1932 except new business written during said year which will be charged their *pro rata* share of the assessment, except Creameries & Cheese Factories which will be charged Stock Companies Rate. Amount of said assessment will be about $80,000.00 and the due date of said assessment will be Dec. 1st, 1932. Notice of said assessment to be mailed Oct. 1st 1932 to all policy holders to their last known address."

Pursuant to this resolution the secretary of the company mailed, and the plaintiff received, a notice under date of October 1, 1932, to the following effect:

"Your *pro rata* of assessment under the following notice is $13.78 under Policy No. 20381, with treasurer's fee."

The notice then sets out the substance of the resolution adopted by the board of directors on August 30, 1932, a list of losses incurred from October 1, 1931, to October 1, 1932, giving the name of the insured and the amount of the loss in each case; then provides:

"Said assessment is to be paid to the Treasurer, Louis Goetz whose Post Office is Cadott, Wis. . . . by presenting this notice any time within sixty days from this date."

And further notice that failure to pay would be followed by imposition of the penalty and was signed "By Order of the Directors, H. V. Bartlett, Secretary."

The secretary also published a notice in the newspapers, but the notice did not comply with the requirements of the statute, and will not be set out. If the notice mailed was a compliance with the statute, it was a sufficient notice under the statute. *Breakstone v. Appleton Mut. F. Ins. Co.* 149 Wis. 303, 135 N. W. 853.

A similar notice was sent out in regard to Policy No. 22877, except as to the amount of the premium, which was $16.54.

The plaintiff argues that neither the resolution adopted nor the notice sent to the plaintiff was in compliance with the statute, because the resolution authorized the secretary to make, and the secretary made, the assessment. It is considered that this contention is without merit. The assessment is to be made upon certain specified policies, to wit: All issued prior to October 1, 1932, except new business written during said year, which policies are to be assessed *pro rata*. The assessment is to be four and one-half mills on a dollar of such insurance. The amount of the assessment was fixed at $80,000. The amount of losses shown by the statement of the loss actually incurred as stated in the notice was $81,512.21. The notice provided:

"All policies on which the assessment is not paid by Dec. 1, 1932, are void until the assessment is paid."

While the notice itself says that the premium is to be paid within sixty days from the date of the notice, it is claimed that by including in the notice a statement that on and after December 1, 1932, the policies will be void extended the payment one day beyond the statutory limit. It is considered that this point is not well taken. The statutory provision that the time of payment shall not be less than thirty days from the date of the notice, nor more than sixty days from the date thereof, is as to the thirty-day provision for the benefit of the insured, and with respect to the sixty-day provision, it is for the benefit of the company. Even if, as contended by the plaintiff, this notice extended the time one day, a matter which is in doubt, it would not invalidate the notice, which in all other respects substantially complied with the statute. What the notice really said to the insured was that his policy would be forfeited on the first day of December if the premium was not paid within sixty days from the date of the notice. Provisions similar in character are held to be merely directory. *Benedict v. Grand Lodge A. O. U. W.* 48 Minn. 471, 51 N. W. 371; 3 Couch, Insurance, § 672.

It is also claimed on behalf of the plaintiff that the agent of the insurer was told that the premises had been sold to the plaintiff, and it is argued that, the agent of the insurer having knowledge of the state of the title, the requirement of the policy that the ownership of the plaintiff be sole and unconditional is waived, citing *Kline v. Washington Nat. Ins. Co.* 217 Wis. 21, 258 N. W. 370. The difficulty with this contention is that the agent of the insuring company was not informed of the true state of facts. He was informed that a sale had been made, whereas in truth and in fact no sale had been made, and the plaintiff had acquired no title of any kind whatever under the oral arrangement entered into with his parents. The state of the title was misrepresented to the agent of the insurer, and the doctrine relied

upon by the plaintiff has no application to the facts in this case.

It is also claimed that the notice is invalid because addressed to no one, and is not signed; the signature of the secretary being printed. It is considered that the notice in the form in which it was given is sufficient in all of these particulars.

It is further argued that the secretary is to make the assessment instead of the board. It is considered that it clearly appears that what the resolution, which was the act of the board, did was to direct the secretary to give notice of the assessment which was thereby made. While the resolution is inartistically framed, the meaning is clear. The notice was good whether the 1927 statute applied as in the second case or the 1931 statute as in the first case. This conclusion precludes recovery for a small amount of personal property included in the policy covering the real property.

While the result reached in this case seems harsh, the situation is of the plaintiff's own creation. He received the notices of his assessment and deliberately refused or neglected to make payment. The argument that the insured is deprived of the benefit of his contract on technical grounds was answered by the trial court in the following language, which we quote because we are unable to make a better answer to plaintiff's contention:

"It may be argued on behalf of the defendant that the defense in this case is not one of that class, that the insured was not misled nor trapped in any way, that he voluntarily allowed his insurance to lapse with full knowledge of the consequences, that this is a statutory form of policy, that unfair defenses are now largely eliminated by statute, and that if a court should invent or approve a poor excuse for not paying an assessment in default, until after a loss occurred, an injustice would be done to the company and its other members. There is a great difference between a member

being legally liable for an assessment and the payment of an assessment when due. Experience shows that when a receiver attempts to collect such assessments, he usually has difficulty in collecting much more than enough to pay expenses of collection. The statutory provision suspending the insurance after default has existed for thirty days, is a very effective means of collecting the assessment. This makes it possible for the company to exist and operate at a minimum expense. The notice of assessment in this case contains some statistical information which is illustrative on this subject. It shows that the company is paying out money in its community for losses to its members to the amount of about $80,000.00 a year, and that during a period of fifty-three years it has operated at an average annual expense to its members of $2.41 per thousand dollars of insurance. No such showing would be possible if each member were not required to carry his own share of the risk for his failure to pay his assessments."

As the trial court held, the whole scheme of town mutual insurance would fail if the members could neglect payment of their assessments and then when a loss occurs claim the benefit of their policies.

*By the Court.*—Judgment in each case is affirmed.

A motion for a rehearing was denied, with $25 costs in one case, on June 24, 1935.