HARRY K. WHITE and another, Infants, by their Guardian, *vs.* ADRIAN ISELIN.

## April 20, 1880.

Guardian's Sale—Subsequent Conveyance by Purchaser to Guardian, and by him to a Bona-fide Purchaser.—At a guardian's sale the real estate was bid in by one H., and, after the sale was confirmed, the real estate was conveyed by the guardian to him. About six months after, H. conveyed the property to the guardian. Both deeds were recorded on the same day. *Held*, that this alone was not sufficient to charge a purchaser from the guardian with notice that the property was bid in for the benefit of the guardian. If, at a sale of real estate by an executor, administrator, or guardian, he purchases through another, or is interested in the purchase of the real estate, contrary to Gen. St. 1878, *c.* 57, § 41, the sale is not absolutely void, but is only voidable by the parties interested in the estate sold, and cannot be avoided by them as against a *bona-fide* purchaser.

Appeal by plaintiffs from a judgment of the district court for Ramsey county, where the action (which was brought to set aside the guardian's sale, and the other conveyances mentioned in the opinion) was tried before *Brill*, J.

*Smith & Egan* and *R. B. Galusha*, for appellants.

*Bigelow, Flandrau & Clark*, for respondent.

GILFILLAN, C. J.   The plaintiffs Harry K. and Harriet M. were minors, owners of certain real estate in the city of Saint Paul, and Dana White was their general guardian,

appointed by the probate court of Ramsey county. On his petition, the probate court issued license to him to sell the real estate. He sold the same, July 19, 1873, nominally to one Hoffman, and made his report of sale, not disclosing that he was in any way interested in the purchase; and the sale was confirmed by the probate court, July 24, 1873. On the same day, White executed to Hoffman the deed of conveyance of the real estate so sold. On January 2, 1874, Hoffman conveyed the real estate to Dana White, the guardian. Both deeds were recorded April 13, 1874. The purchase by Hoffman was in fact made in the interest and for the benefit of Dana White, pursuant to a secret understanding between them, made prior to the guardian's sale. On May 1, 1874, the Equitable Trust Company loaned Dana White $9,000, and, to secure repayment of that sum and the interest, he executed a mortgage npon said real estate to Jonathan Edwards, trustee, which mortgage was recorded May 20, 1874. The mortgage was afterwards duly foreclosed, the real estate sold to this defendant, he paying the purchase price by surrender of the bonds of Dana White, to secure which the mortgage was given, and the proper master's deed was executed to the defendant.

The said loan was made and mortgage taken in good faith, and the purchase at the foreclosure by defendant was made in good faith; neither said trust company, nor Edwards, nor this defendant, having, prior to the commencement of this action, any actual notice that Dana White had any interest in the purchase by Hoffman at the guardian's sale, nor of any of the facts, except such as appeared of record. There was nothing in the record to charge either the company, or Edwards, or defendant with notice of the illegality in the sale. The facts that the purchaser at the sale conveyed some months afterwards to the guardian making it, and that the deed to the purchaser, and that from him to the guardian, were recorded the same day, were not sufficient to charge a purchaser from the guardian with notice of any

infirmity in either of the conveyances. The defendant is in the position of a purchaser in good faith. The question in the case is, was the sale by the guardian, by reason of his being interested in the purchase, so far void that a purchaser in good faith can make no title through it?

The statute regulating such sales, Gen. St. 1878, *c.* 57, § 41, provides that "no executor, administrator or guardian making the sale shall directly or indirectly purchase, or be interested in the purchase of, any part of the real estate so sold; and all sales made contrary to the provisions of this section shall be void."

The plaintiffs contend that under this statute the sale is an absolute nullity—void as to everybody—so that no rights could be lost, or acquired, or in any way affected by it. If the plaintiffs be right in this, of course it is no protection to the defendant that he is a *bona-fide* purchaser. The defendant contends that the statute merely affirms the rule which, prior to its passage, had become established by decisions of the courts, that the sale is void only as against those having an interest in the estate sold, and only when they, while it remains in the hands of some one chargeable with notice of the facts, seek to avoid it; and that the statute uses the word "void" in the sense in which it was, prior to its passage, very frequently used by the courts—that is, voidable at the election of the *cestuis que trust*. If the defendant be right in this, the plaintiffs cannot avoid the sale as to him.

We find few decisions upon similar statutes. The statute in New York does not differ from ours. In *Forbes* v. *Halsey*, 26 N. Y. 53, the court construed the statute to make such sales absolutely void, so that "the title remains in the original owners, as though the sale had never been made." The same thing was held in *Terwilliger* v. *Brown*, 44 N. Y. 237. In neither case is any reason given for holding such to be the meaning of the statute, other than that such is its language.

The statute of California provides: "No executor or administrator shall directly or indirectly purchase any property of

the estate which he represents." The absence of words declaring such a purchase void in no way lessens the effect of the prohibition. In *Boyd* v. *Blankman*, 29 Cal. 19, it was held, in an opinion reviewing the authorities, and stating well the reasons, that a sale made contrary to this statute was not absolutely void, but only voidable, and might be ratified by the persons at whose instance it was voidable.

In Ohio, a statute regulating sales on execution provided that "no sheriff or other officer making the sale of property, either personal or real, nor any appraiser of such property, shall either directly or indirectly purchase the same; and every purchase so made shall be considered fraudulent and void." The character of such a sale was determined in *Terrell* v. *Auchauer*, 14 Ohio St. 80. Although the opinion attaches considerable—as we think, undue—importance to the word "*considered*" in the statute, it is, aside from the meaning given to that word, to the effect that the statute is one of those instances in which the legislature uses the word "void" in the sense of "voidable."

The statute of Michigan as to executors', administrators' or guardians' sales is the same as ours. As to whether a sale contrary to the statute was utterly void, so that a *bona-fide* purchaser could make no title through it, or only voidable, and so passing a title to a *bona-fide* purchaser, the supreme court, in *Hoffman* v. *Harrington*, 28 Mich. 90, was equally divided. It is an instructive case, as the opinions say about all that can be said on each side of the question.

Instances where courts have held the word "void" in statutes as having the effect of voidable, occur under statutes against usury both in England and the older states of the Union. *Cuthbert* v. *Hale*, 8 Term Rep. 490; *Hussey* v. *Jacob*, 1 Ld. Raym. 87; *Jackson* v. *Henry*, 10 John. 185; *Dix* v. *Van Wyck* 2 Hill, 522; *Green* v. *Kemp*, 13 Mass. 515; *Reading* v. *Weston*, 7 Conn. 409.

In *Allis* v. *Billings*, 6 Met. 415, the court say: "The term 'void,' as applicable to conveyances and other agreements,

has not, at all times, been used with technical precision, nor restricted to its peculiar and limited sense as contradistinguished from the term 'voidable,' it being frequently introduced, even by legal writers and jurists, where the purpose is nothing further than to indicate that a contract was invalid and not binding in law."

It is difficult to lay down a rule when courts may construe the term "void," occurring in a statute, to mean voidable. We think, generally, it is to be understood that the legislature employs the term in its strict and precise meaning, and that when it says a thing shall be void, it means that the thing shall be null, and of no effect whatever. But when, in speaking of certain transactions, courts and law-writers have frequently used the word "void," not in its strict and precise sense, but as meaning voidable, it may be a question, did the legislature, in legislating concerning such transactions, and declaring they shall be void, use the word in its strict sense, or in the less accurate sense? If there be nothing in the other language of the statute to indicate the sense in which the word was used, the general purpose of the statute, the prior rule of law on the subject, and the consequences of either construction, may be considered.

The manifest purpose of this section is to protect the interests of persons under guardianship, and of those interested in the estates of deceased persons, against possible frauds in sales of real estate, on the part of guardians, executors or administrators. Prior to the statute, the rule, for the same purpose of protection, was that such a sale, the purchase being made in the name of a third person, but in the interest in any way of the trustee, was voidable at the election of the persons interested as *cestuis que trust* in the real estate sold, if they considered that their interest required them to avoid it, but capable of ratification by them if they thought it to their advantage that it should stand. A condition of this right of election was that it should be timely exercised. Treating the word "void" in the statute as used in its strictest

sense, a radical change in the rule is effected. In such case the sale is an absolute nullity—void as to everybody. No one can be prejudiced, or benefited, or in any way affected by it. However advantageous the sale might be to those interested in the land, they could have no benefit from it. Although they might desire to let it stand, and secure to themselves the price bid, they could not do so; and mere lapse of time would not strengthen a title held under the sale. It might be defeated at any time, and by any one. It is impossible to see that the former rule was not entirely adequate for the protection of those intended to be protected. No reason can be given why the legislature should intend to take from such persons the right of election, which might often be a very beneficial right.

Such a change in the rule would inevitably prejudice the interests of those interested, in a still more important particular. Sales by guardians, executors or administrators are in many cases absolutely necessary. It is of great importance to those concerned that at such sales the land sold should bring a fair price. But if titles held under such sales are liable to be defeated by secret frauds, which the vigilance of a purchaser cannot guard against, they can hardly be regarded as salable titles. No prudent man could pay a fair price for a title liable to such imputation. Make it a rule that sales perfectly fair on their face, which, so far as appears, have been conducted according to law, and which have been confirmed by the court ordering them, may be at any time and by any body shown to be null, and the titles under them entirely defeated, by proof of a secret understanding between a trustee and a purchaser, and such sales, as a means of obtaining the value of the land sold, will be impracticable.

The uncertainty which such a rule would introduce into titles would be contrary to the general policy of the law on the subject of titles, to real estate. That policy is to give stability to titles, and to enable purchasers using proper caution to be secure in the titles they take. This is the purpose

of the statute regulating the registering of deeds. A great many titles are now held under sales by guardians, executors or administrators, and in course of time a large part of the real property in the state will be so held. Is it probable that the legislature intended to depart from the general policy of the law, and to provide, in respect to so large a class of titles, so that the most cautious and vigilant cannot be secure in taking them? The legislature may have so intended, and it may likewise have intended to take from the class of *cestuis que trust* concerned the important advantage which the right of election under the prior rule gave them, and also to impair the value of sales by this class of trustees; but we cannot hold that it did so intend merely from its use of a word, which, from the manner in which it had been many times employed by courts and law-writers, was in some degree ambiguous. We think the word "void" in this statute was used in the sense of voidable, and the sales prohibited are void, as they were void before—that is, at the election, timely exercised, of those interested in the land sold. Such election could not be exercised against a *bona-fide* purchaser.

This view of the section is sustained by the provisions of subsequent sections of the chapter. Section 50 limits the time within which a person claiming the estate sold by an executor or administrator, or a guardian, must bring an action to recover the real estate sold. Section 51 provides that in case of an action in which an heir or person claiming under the deceased, or a ward or person claiming under him, contests the validity of the sale, "it shall not be avoided on account of any irregularity in the proceedings," if certain things appear, which are: that there was license to sell; that a bond was given when required; that the prescribed oath was taken; that proper notice of sale was given; that the sale was at public auction, and has been confirmed by the court; and that the premises are *held by one who purchased in good faith*. By section 53, if the validity of the sale

is drawn in question by a stranger to the title sold, the sale shall not be void on account of any irregularity in the proceedings, if the executor, administrator or guardian was licensed to make the sale by the proper probate court, and he did accordingly execute and acknowledge, in legal form, a deed for conveyance of the premises. From these sections we think it apparent the legislature did not intend that in any case of sale by the trustees named, the validity of the sale should be open to attack at any time, however remote, by any person, even though not interested; but that a stranger might question the sale only if there was no license by the proper court, or no deed of conveyance by the executor, administrator or guardian; and a person claiming under the deceased, or the ward, or a person claiming under him, should question it only if one or more of the conditions mentioned in section 51 be wanting.

Judgment affirmed.