74 P.2d 1030

**KYLE v. CHAVES et al.**

No. 4322.

Supreme Court of New Mexico.

Dec. 16, 1937.

O. E. Little, of Roswell, for appellant.

John E. Hall, of Carrizozo, for appellees.

ZINN, Justice.

In the fall of 1930 New Mexico was thrown into the depths of an economic depression which crippled it and its citizens' economic condition immeasurably. Livestock, agriculture and mining are the industries which are the economic "backbone" of this state. These industries were on the brink of bankruptcy. Cotton, coal, copper, cattle, sheep, wool, and hides, our principal commodities, were selling at less than cost of production. Debtors were unable to pay their creditors. Creditors were reluctant to foreclose on their debtors. Added to the economic disaster of low prices and no market, New Mexico during the year of 1934, when it seemed as though there was a possibility of emerging from the economic depression, was visited by a drouth. A plague was added to an existing plague. Just when the farmers and livestockmen were beginning to see the end of their economic difficulties resulting from low prices, this new blow struck them.

New Mexico, the sovereign state (and its political subdivisions) was one of the largest creditors of its own citizens. Taxes were due to the state and its political subdivisions which could not be collected. To enforce collection of taxes would have meant ruination to many of its substantial citizens. To enforce collection of taxes would have meant the taking by the state of homes, ranches, livestock, and businesses of many of its citizens. To many the result would have been disastrous. Penalties for nonpayment of taxes, when added to the unpaid principal and accumulated interest, under the laws then in effect, often amounted to more than the market value of the property which the state would be

compelled to take for nonpayment of taxes. Of all this we take judicial notice.

To prevent the disaster that would follow strict enforcement of tax collections, either in the role of a kindly creditor or a benevolent sovereign, and to relieve the existing distress, the Legislature in 1933 enacted chapter 109, then known as the "Tax Moratorium Act." The apparent purpose of this law was to give the harassed taxpayer who was delinquent a breathing spell, an opportunity to pay the principal of his tax and be given a remission of his interest and penalties upon complying with the statute. Some interest was added to the principal after a certain date, and such interest was increased after a longer period of time. The length of life of the moratorium as provided by said Laws 1933, c. 109, was one year.

At this same session of the Legislature there was enacted chapter 171. This act provided the practice and procedure for the collection of delinquent taxes and for the sale of property on which taxes were delinquent. This act provided for the manner of the issuance, sale, and assignment of tax sale certificates and the issuance of tax deeds. Section 34 of said chapter 171, however, took cognizance of the so-called Tax Moratorium Act as to delinquent taxpayers as provided by said chapter 109.

At the hour of noon on April 9, 1934, the Legislature of the state of New Mexico convened in a special session, at the call of the Chief Executive, the Hon. A. W. Hockenhull, to enact such legislation as was contained in his call.

Apparently Laws 1933, c. 109, had not fully accomplished its intended purpose for the distressed delinquent taxpayer. The state, in its wisdom, through the call of its Governor, and acting through the Legislature, again enacted a so-called "Tax Moratorium Act." Laws 1933, c. 109, expired by its own terms on March 14, 1934. Those who had not or were unable to take advantage of its provisions were in the same position as though the law had not been enacted. To provide relief to those who were still in distress, the special session of the Legislature of 1934 enacted chapter 16. A new breathing spell was given the delinquent taxpayer. The delinquent taxpayer by this act was in effect told, that if he paid the principal before June 15, 1934, the state would remit the accumulated penalties and interest.

At the same special session, and approved the same day, as chapter 16, there was enacted chapter 27. This act provided the procedure for the collection of delinquent taxes and provided for the sale of property on which taxes were delinquent. This act provided for the issuance, sale, and assignment of tax sale certificates, and the issuance of tax deeds. Section 36 of said chapter 27, in addition to the proposed opportunity for relief provided to distressed delinquent taxpayers by the provisions of chapter 16 of said special session, made provision for partial payment of delinquent

taxes and the conditions under which such payments would be accepted.

When the Legislature of the state of New Mexico met at the beginning of the year of 1935, many of the farmers and stockmen were still delinquent and unable to pay their taxes due to the drouth of 1934, as above related. The Legislature, to accomplish the purpose of relief for these distressed delinquent taxpayers, again enacted a tax moratorium statute. This was chapter 133, which went into effect *February 28, 1935.*

The provisions of this act and its effective date as italicized in the preceding paragraph, which provisions and effective date are pertinent to an understanding and disposition of the case to be considered and discussed, are as follows:

"Section 1. That the County Treasurer and Ex-Officio Collector of each county of the State of New Mexico, be and he is hereby authorized and directed to issue tax receipts upon the payment to him of the principal of taxes past due and unpaid, plus court costs, if any, and charged against the taxpayer as shown by the tax rolls in his office, if said principal be paid on or before June 15, 1935. Every receipt so issued by the County Treasurer shall be for the amount actually paid to him and he shall endorse thereon and on the tax rolls that the receipt has been issued pursuant to the provisions of this Act.

"Section 2. It is further provided that any person or taxpayer who shall pay all 1934 taxes assessed and levied upon the property owned by such person or taxpayer, on or before June 15, 1935, as provided in Section 1 hereof, or shall pay all 1934 taxes and interest, on or before December 1, 1935, such person or taxpayer is hereby given the right, option and privilege of paying all taxes delinquent for the years 1933, and prior years, in the following manner:

"All of the principal of such taxes plus court costs, if any, may be paid prior to December 1, 1935 without the payment of any interest or penalty thereon; or one-fourth of the principal of such delinquent taxes plus court costs, if any, may be paid prior to December 1, 1935 without penalty or interest; and any person or taxpayer who shall have paid one-fourth of the principal of all such delinquent taxes for the years 1933, and prior years, shall have the further right, option and privilege of paying the balance or remainder of such delinquent taxes as follows:

"One-third of such balance or remainder may be paid any time prior to December 1, 1936 with 6% interest per annum thereon from date of delinquency until paid; and one-third of such remainder or balance of such delinquent taxes may be paid out any time prior to December 1, 1937 with 6% per annum interest thereon from date of delinquency until paid; and the balance at any time prior to December 1, 1938 with 6% per annum interest thereon from date of delinquency until paid; provided:

"That the right, option and privilege of paying delinquent taxes for the year 1933,

and prior years, as by this Act provided shall be contingent upon the payment in full, before delinquency date of any installment of all current taxes for the year or years subsequent to 1935; provided, that the 1935 taxes shall be paid in full on or before the date of delinquency of the second half of the 1935 taxes. Upon failure to meet the payment of such current taxes in full, before delinquency, or the failure to pay any installment or installments of delinquent taxes within the time in this Act provided, the right, option and privilege shall be deemed to have been forfeited and the taxpayer shall thereupon become subject to suit or other method of collection as may be provided by law for the collection of delinquent taxes at the time of such forfeiture.

"Section 3. Upon payment or payments in full as in this Act provided, the lien of the State for such delinquent taxes, penalties, and interest shall be discharged and cancelled, and any unassigned tax lien or tax sale certificate or any recorded judgment shall be discharged of record; and no action at law or suit in equity, or other procedure, shall be brought or taken to enforce the payment or collection of other or additional interest and/or penalties under existing law, unless such action, suit, or procedure be commenced within six months from date of final payment as herein extended. The lands and property of any delinquent taxpayer, making the payments and complying with the provisions hereof as to deferred and installment payments of delinquent taxes shall not be sold at the annual sale of property for delinquent taxes, for the year 1933, and prior years, nor shall any unassigned tax lien or tax sale certificate, heretofore issued, be sold or assigned by the County Treasurer, until or unless such taxpayer shall default in making the payments provided herein, or any thereof; but upon failure of any person or taxpayer to make the payments or partial payments, or any of them, as in this Act provided, the County Treasurer may sell and assign tax liens or tax sale certificates as now provided by law.  *  *

"Section 6. The provisions of this Act shall not be construed to repeal or invalidate any taxes, tax lien act, tax lien certificate or discharge any taxes or tax lien, or affect any existing law relating to taxes or tax liens, except as in this Act specifically provided; nor shall the provisions of this Act be applicable to taxes for which tax lien certificates or tax sale certificates have been issued and assigned."

All of the above recitals are set forth preliminary to a recital of the facts in the immediate case before us, so that the issues may be more readily understood.

On the 25th day of March, 1936, the plaintiff (appellant here) filed his second amended complaint in the district court of Lincoln county in which he alleged that the lands involved in this cause were sold to the state of New Mexico, as provided by law, by the treasurer of Lincoln county, N. M., on *June 16, 1933*, and that, on *June 3, 1935,* said treasurer assigned the certificate of sale of said lands to the appel-

lant. That thereafter and on *July 24, 1935,* said treasurer issued to the plaintiff a tax deed, based upon said tax sale certificate, conveying said lands to the plaintiff, which said tax deed was duly filed and recorded as provided by law.

At this point it is well to note that the tax moratorium statutes did not operate in cases where the tax sale certificates had been issued and assigned by the counties prior to the effective dates of the tax moratorium statutes.

The complaint also alleged that neither of the defendants (appellees here) had made legal tender to the treasurer of Lincoln county, N. M., of the taxes due against said lands or any part of said taxes, prior to *December 1, 1935.* The complaint also alleged that neither of the defendants had filed any proceedings to avoid or set aside the assignment or sale of the tax sale certificate or the tax deed to the plaintiff within the time provided by law, and that such proceedings could not now be filed and were, therefore, barred by operation of law. Plaintiff asked that his title to said lands be quieted.

Defendants G. F. Bruns and Clara V. Bruns filed a disclaimer. Defendants Roberto Chaves and Lucia W. Chaves demurred to the complaint upon the ground that the tax deed to the plaintiff was without authority of law, and, therefore, void. The trial court sustained this demurrer and, upon plaintiff's refusal to plead further, dismissed the complaint, from which judgment of dismissal this appeal is prosecuted.

Plaintiff contends that the trial court erred in sustaining the demurrer for the reason that the complaint showed title in plaintiff as above set out and, also, even if the treasurer had assigned the certificate and issued the deed prematurely, such action could not be complained of by defendants because they had taken no action to set aside such assignment and deed as required by law.

It is the defendant's theory that the taxpayer had until December 1, 1935, in which to pay all 1934 taxes and interest and one-fourth of the principal of delinquent taxes for the year 1933 and prior years, and they are not in default under the terms of the act until they have permitted said date to pass without making said payments; that during such time as the taxpayer is not in default under the express provisions of said section the taxpayer is protected by the provisions of Laws 1935, c. 133, § 3, which provides in substance that unassigned tax lien or tax sale certificates shall not be sold or assigned by the treasurer until or unless such taxpayer shall default in making the payments provided by said statute.

This theory of the defendants as presented to us was the theory presumably advanced in the trial court, and was the theory adopted by the trial judge when he sustained the demurrer and dismissed the complaint.

There is not before us any question as to the constitutionality of these so-called "Moratorium Statutes" in light of N.M.

Const. art. 4, § 24, which expressly prohibits the enactment of any laws which relinquish, extend, or extinguish, in whole or in part, any indebtedness or liability of any person or corporation, to the state or any municipality therein. This opinion is not to be taken to sustain or deny validity under section 24, article 4, of the Constitution.

Although section 3 of said chapter 133 plainly states "nor shall any unassigned tax lien or tax sale certificate, heretofore issued, be sold or assigned by the County Treasurer, *until or unless such taxpayer shall default in making the payments provided herein"*; and though the treasurer was forbidden to sell and assign tax sale certificates after the act's approval and prior to December 1, 1935, nevertheless, the Legislature did not expressly say that any tax sale certificate sold contrary to the express prohibition of the statute will be void.

The question in this case comes to this: "If the assignment by the county treasurer of the tax sale certificate held by the county during the period from February 28, 1935, to December 1st of that year was 'void', then the plaintiff (appellant) derived no rights thereunder and the demurrer was properly sustained; whereas, if the assignment aforesaid was 'voidable', the demurrer should have been overruled."

There has been a great deal written by the text writers and the courts relative to the inaccurate use of the word "void." See 67 C.J. 263 et seq. It is there pointed out that "void" is not always used in an absolute or in its literal sense; it may be and often is used in the sense of "voidable." "Matters which are properly 'voidable' are very commonly spoken of as void; the two words are often used interchangeably. Indeed, 'void' is so often used in the sense of 'voidable' as to have almost lost its primary meaning."

"Relatively void. Many things are called 'void' which are not absolutely so, and, as to mankind generally are treated as valid; they can only be called 'relatively void.' That is 'absolutely void' which the law or the nature of things forbids to be enforced at all, and that is 'relatively void,' which the law condemns as a wrong to individuals, and refuses to enforce against them." 67 C.J. 266.

In § 9 of the Corpus Juris, article on "void," reference is made to "statutory and constitutional provisions." In this section is a statement which more nearly expresses the thought. It is: "In general, it seems that where an enactment has relation only to the benefit of particular persons, 'void' will be understood as 'voidable' only at the election of the persons for whose protection the enactment was made, provided they are capable of protecting themselves." 67 C.J. 268.

In support of this text there is cited a large number of cases from various jurisdictions, but consideration of these various cases is rendered unnecessary because among the cases cited is Gross, Kelly & Co. v. Bibo, 19 N.M. 495, 145 P. 480, 483.

Attention is called to the decision of the Supreme Court of the United States in United States v. New York & Porto Rico S. S. Co. 239 U.S. 88, 36 S.Ct. 41, 60 L. Ed. 161. The first syllabus is as follows: "Even if a statute declares a transaction void for want of certain enumerated forms, the party for whose protection the requirement is made may waive it; void in such cases meaning only voidable at that party's choice."

Mr. Justice Holmes, in concluding the opinion, said: "Even when a statute in so many words declares a transaction void for want of certain forms, the party for whose protection the requirement is made often may waive it, 'void' being held to mean only voidable at the party's choice."

As heretofore observed, chapter 133, Laws 1935, does not say that the act of. the treasurer in assigning a tax sale certificate held by the county during the moratorium period shall be void, so the situation is more favorable to the plaintiff than if the statute had used such language, which under the authorities would still be open to interpretation.

As stated above, the opinion prepared by Chief Justice Roberts for the court in Gross, Kelly & Co. v. Bibo, supra, fully supports the foregoing text quoted from Corpus Juris, and could be profitably read in full. We merely call attention to portions of it for the purpose of emphasis and analogy.

Mr. Chief Justice Roberts quoted from a text writer as follows: "A transaction which is capable of being rescinded on the ground of fraud, is to be treated as good until rescinded, and not as bad until confirmed; or, in other words, that a contract which *may* be set aside at the option of the injured party, is to be considered as being in effective operation until that party takes measures to enforce his right to rescind."

Judge Roberts continues: "An investigation of the text-books and reported cases discussing the question as to effect of a secret preference given to a creditor to induce him to sign a composition agreement on the rights of innocent creditors who sign the same will disclose that the words 'void' and 'voidable' are used interchangeably, and without apparent distinction as to meaning. The two words, however, in so far as the rights of the parties in this case are concerned, have a widely different meaning. In many cases it is perhaps true that a distinction between the meaning of the words would be of no consequence. For example, in the present case, if Gross, Kelly & Co. had discovered the fraud prior to the execution of the notes, and had elected not to be bound by the composition agreement, such agreement would have been void as to them at the time the notes were executed; for by their election they would have made it void from the time of such election. For this reason, perhaps, the word 'void' is often used when, in fact, 'voidable' would be the technically correct expression."

Paraphrasing the language of Judge Roberts to fit the case at bar as follows:

"If the defendants had discovered that the county treasurer had assigned the tax sale certificate to appellant Kyle and had elected not to be bound by such assignment and manifested such election by paying their delinquent taxes prior to December 1, 1935, such assignment would have been void *as to them* at the time the assignment was made, for by their election they would have made it void from the time of such election."

Judge Roberts indulges another quotation: "The word 'void,' when used in any of these instruments, will therefore be construed in the one sense or the other, as shall best effectuate the intent in its use, which will be determined from the whole of the language of the instrument and the manifest purpose it was framed to accomplish."

Judge Roberts again said: "From an investigation of many of the reported cases we find that, where a court means 'relatively void,' as distinguished from 'absolutely void,' the word 'void' is used as often, if not more so, than the word 'voidable,' to indicate that meaning, as it is seldom necessary to distinguish the meaning of the words, where the act has been avoided by the innocent party who has the right to avoid it."

Judge Roberts quotes Judge Cooley as saying: "If it is apparent that an act is prohibited and declared void on grounds of general policy, we must suppose the legislative intent to be that it shall be void to all intents; while, if the manifest intent is to give protection to determinate individuals who are sui juris, the purpose is suffi-ciently accomplished if they are given the liberty of avoiding it."

Judge Cooley's language seems very appropriate in this case. The statute in question may be assumed to have been designed to give protection to the delinquent tax-payer and to extend this protection until December 1, 1935. If the act of the treasurer in assigning the certificate was unlawful, invalid, irregular, or void in the loose sense in which that word is used, it could have been rendered absolutely void by the taxpayer availing himself during the period of his protection of "the liberty of avoiding it." Judge Roberts continues: "We have been able to find no case in which, where the word 'voidable' is used, the court's meaning was that the contract or instrument, or legislative enactment in question was absolutely void, but these cases heretofore cited, along with many others, indicate that the books are full of cases where the word 'void' has been used without qualification and the court has meant 'relatively void.' The logical conclusion, therefore, is that, where the word 'void' is used, it is necessary to examine the context, whether it be a legislative enactment, a judicial opinion, or a contract of conveyance, in order to definitely ascertain whether or not 'absolutely void' or 'relatively void' is meant."

Applying the foregoing principles to the case under consideration, Judge Roberts went on to say: "The preferring of one creditor over another in a composition agreement does not render the contract in-

valid or subject to disaffirmance, if such preference is known and assented to by the creditors who become parties to the agreement. It is not contrary to public policy to pay one creditor more than another in order to secure the satisfaction of the debt; hence it could not be argued that such a contract so providing would be invalid and void on that ground. It is the fraud practiced on the innocent creditors by which they are induced to give their assent to the composition which renders the contract 'voidable,' and, as the fraud injures the individual or individuals, rather than the public, the contract is relatively void or voidable only."

To paraphrase the foregoing statement of Judge Roberts to the case at bar would be somewhat as follows: "It is not contrary to public policy for the treasurer to assign tax sales certificates to those who desire to purchase them. In fact all of the previous statutes, including chap. 27, L. 1934, encouraged the sale of property for delinquent taxes, the assignment of certificates and the collection of such delinquent taxes, subject only to certain moratoriums or concessions made to the taxpayers to extend his time for payment. If the treasurer practiced a fraud by assigning the tax certificate at a time when it was illegal for him to assign it, it injured the taxpayer, rather than the public, and the contract is *relatively void or voidable only."*

In effect, the defendants, by their failure to take advantage of the indul-gence and protection afforded them by the Legislature, confirmed the action of the county treasurer, or at least waived any right to object thereto.

Much of what has been said in the texts and cases cited were where the statute had "in so many words" declared a transaction void, the courts holding that only voidable was meant.

The case for "voidable" is stronger where the statute has not said that the failure to observe a legislative direction or mandate renders the action void.

Section 24 of chapter 27 of the Laws of Special Session of 1934 is in effect a legislative statement that acts of the taxing officials who are entrusted with the collection of delinquent taxes shall *not* be held to render tax titles *void* and specifically setting forth defenses that may be interposed in controversies involving titles claimed by virtue of tax deeds.

A very good pattern is provided by Mr. Cooley in his work on Taxation, at § 1489, 4th Ed., where he says: "In determining the effect of the defects and irregularities in prior proceedings as affecting the title of the tax purchaser, *several things* must be taken into consideration. First, does the matter complained of affect the substantial rights of the taxpayer? If it is not material to his rights or is a violation of a merely directory statute, the title of the tax purchaser is not affected; but if there is any jurisdictional defect or failure to obey a mandatory statute the purchaser acquires

no title. Reference *must also be made to curative tax statutes."* (Italics ours.)

The last statement is very important. There are numerous instances where delinquent taxpayers have urged in the courts of this state that the purchaser acquired no title and that the tax proceedings were void because of jurisdictional defects or failure to obey certain mandatory statutes. *But for* the curative provisions contained in section 24 of chapter 27 of the Laws of Special Session of 1934, [Tax Code cited supra], we would doubtless have gone in accordance with the first part of the statement made by Mr. Cooley, quoted supra. Curative provisions are so far-reaching that we have said that they mean exactly what they say, and there is no way for the delinquent taxpayer who has failed to avail himself of the right of redemption or made payment to overcome such curative provisions.

Not only did the 1935 Legislature *fail* to say in chapter 133 that the act of the county treasurer in assigning the tax sale certificate during the moratorium period was void, but the earlier statute, which has not been repealed, has in effect said that no court shall say that the failure to obey a mandatory or other statute renders a tax title void. The Legislature has said what considerations or circumstances would make a tax title void and have excluded all others.

It seems therefore that justice and the rules of construction do not require that we should say that the act of the county treasurer, in assigning this certificate during the time he was told by the Legislature not to do so, was void *absolutely* but was void relatively or conditionally, and that the condition has not arisen for declaring it void. The obligation placed upon the treasurer to not assign tax sales certificates held by the county from February 28, to December 1, 1935, is reciprocal; if the taxpayer performs his duties to the state, the state will perform its duties to the taxpayer and only at the behest of the taxpayer who has so performed his duties to the state will we say that the state's failure to perform its duty to withhold assignment of tax sale certificates for his benefit is void in the broad sense of void absolutely, but is only void when made so by the taxpayer having performed his duties.

We must hold that chapter 133, Laws 1935, did not manifest any intention on the part of the Legislature to remit taxes due the state nor to forego all of the procedure theretofore provided for the enforcement of the collection of taxes. Said chapter merely designated a class of taxpayers who might relieve themselves of the consequences of their delinquencies by performing certain conditions in the statute enumerated. The defendants in the case at bar, being shown by the facts alleged in the complaint and admitted by the demurrer to fall within the class of a delinquent taxpayer whose property had been sold in the process of collecting these delinquent taxes and had never performed any of the conditions provided by the Legislature for their relief, we ought not to

say that the action of a county treasurer in failing to heed the admonition of the Legislature for the taxpayer's benefit was absolutely void but only void upon condition that the taxpayer should avail himself of the protection afforded; in other words, *voidable*.

For the reasons given, the judgment of the district court will be remanded, with instructions to overrule the demurrer.

It is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, and BRICE JJ., concur.