427 P.2d 230

STATE of New Mexico ex rel. STATE TAX COMMISSION and Jesse D. Kornegay, Chief Tax Commissioner, Plaintiff-Appellant,

v.

Elmer N. GARCIA, Perry Wilkes and Alice G. Wilkes, his wife, Defendants-Appellees.

No. 8033.

Supreme Court of New Mexico.

May 1, 1967.

**704**

Boston E. Witt, Atty. Gen., Thomas O. Olson, Sp. Asst. Atty. Gen., Santa Fe, for appellant.

Harry O. Morris, Albuquerque, for appellees.

OPINION

MOISE, Justice.

The State appeals from summary judgments granted in favor of defendants in three cases wherein the State was seeking to set aside certain deeds issued by the State Tax Commission to one Elmer N. Garcia. In each case it was alleged that the deeds were issued because of fraudulent, false, illegal and untrue representations, documents and statements made by defendant Garcia to the State Tax Commission and relied on by it, and that Garcia knew that such right to repurchase was limited to persons who had an interest which had been extinguished by the tax deed to the State, and that he did not qualify as such a person. Defendant Garcia, in turn, conveyed by quitclaim deed to defendants Larry Wilkes and his wife Alice G. Wilkes, neither of whom had any knowledge, actual or constructive, of Garcia's fraudulent representations. Both the State and defendants Wilkes sought summary judgment and, upon the State confessing to inability to establish any knowledge by Wilkes of the alleged fraud of defendant Garcia, judgment was entered in favor of defendants Wilkes. Defendant Garcia has disclaimed any interest.

The State's position is that the deed to Garcia was made pursuant to § 72–8–31, N.M.S.A.1953, and that since Garcia was not a person entitled to redeem under the

provisions of that section, he obtained no title and, consequently, his grantees obtained nothing from him. The State relies principally upon Trujillo v. Montano, 64 N.M. 259, 327 P.2d 326, wherein it was held that a person having no prior interest in property acquired nothing from the State through a deed issued pursuant to § 72–8–31, supra. This was a case wherein the owner having the statutory right to redeem had procured a deed and, thereafter, a previous owner obtained a deed based upon another tax sale, falsely claiming to be the owner. The State further argues that under the holding in Shackelford v. McGlashan, 27 N. M. 454, 202 P. 690, 23 A.L.R. 75, since the grantee in an invalid tax deed (Garcia) obtained nothing, his grantees (Wilkes) could receive nothing. That the statements in those cases relied on by the State must be restricted to the fact situations there being considered and do not apply here is demonstrated conclusively by our discussion which follows:

We also note the case of Eager v. Belmore, 53 N.M. 299, 207 P.2d 519 (1949). There a deed from the State to an employee of the State Corporation Commission, prohibited by law from purchasing, was held to be void. The action was brought by the prior owner against the purchaser and the wife and brother of a member of the State Corporation Commission to whom the property had been deeded. No question was raised as to whether the transferees were or could be bona fide purchasers. However, in the case, reliance is placed on the following language found in Waskey v. Hammer, 223 U.S. 85, 32 S.Ct. 187, 56 L.Ed. 359:.

> "The general rule of law is that an act done in violation of a statutory prohibition is void and confers no right upon the wrongdoer; but this rule is subject to the qualification that when, upon a survey of the statute, its subject-matter and the mischief sought to be prevented, it appears that the legislature intended otherwise, effect must be given to that intention. * * *"

In this language we perceive a recognition that "void" does not always mean "absolutely void" but, to the contrary, when it is clear that such a meaning was not intended, it may mean "voidable." In arriving at our conclusion in the instant case, we consider whether the conveyance being attacked was "void" or "voidable" because of fraud as alleged, which resulted in a conveyance to a purchaser not entitled to redeem from a tax sale.

The problem of when conveyances are void, and when voidable has engaged the attention of this court in a number of cases. We first call attention to Gross, Kelly & Company v. Bibo, 19 N.M. 495, 145 P. 480 (1914) wherein is found a discussion as it related to a fraudulent preference to a creditor who joined in a composition agree-

ment. That case was discussed at length in Kyle v. Chaves, 42 N.M. 21, 74 P.2d 1030 (1937), being a case we consider most instructive on the problem here being considered. Kyle v. Chaves, supra, involved the question of the validity of a tax deed issued in violation of the Tax Moratorium Act then in effect. The court held the deed "voidable" and determined that the previous owner who had not complied with the statute by paying the taxes was in no position to complain. Of course, if the conveyance had been "absolutely void" this result could not follow. In the course of the opinion of the court, we find the following pertinent discussion:

"* * * 'It is not contrary to public policy for the treasurer to assign tax sales certificates to those who desire to purchase them. In fact all of the previous statutes, including chap. 27, L.1934, encouraged the sale of property for delinquent taxes, the assignment of certificates and the collection of such delinquent taxes, subject only to certain moratoriums or concessions made to the taxpayers to extend his time for payment. If the treasurer practiced a fraud by assigning the tax certificate at a time when it was illegal for him to assign it, it injured the taxpayer, rather than the public, and the contract is *relatively void or voidable only.*'

"In effect, the defendants, by their failure to take advantage of the indul-gence and protection afforded them by the Legislature, confirmed the action of the county treasurer, or at least waived any right to object thereto.

"Much of what has been said in the texts and cases cited were where the statute had 'in so many words' declared a transaction void, the courts holding that only voidable was meant.

"The case for 'voidable' is stronger where the statute has not said that the failure to observe a legislative direction or mandate renders the action void.

"Section 24 of chapter 27 of the Laws of Special Session of 1934 is in effect a legislative statement that acts of the taxing officials who are entrusted with the collection of delinquent taxes shall *not* be held to render tax titles *void* and specifically setting forth defenses that may be interposed in controversies involving titles claimed by virtue of tax deeds.

"A very good pattern is provided by Mr. Cooley in his work on Taxation, at § 1489, 4th Ed., where he says: 'In determining the effect of the defects and irregularities in prior proceedings as affecting the title of the tax purchaser, *several things* must be taken into consideration. First, does the matter complained of affect the substantial rights of the taxpayer? If it is not material to his rights or is a violation of a merely directory statute, the title of the tax pur-

chaser is not affected; but if there is any jurisdictional defect or failure to obey a mandatory statute the purchaser acquires no title. Reference *must also be made to curative tax statutes.'* (Italics ours.)

"The last statement is very important. There are numerous instances where delinquent taxpayers have urged in the courts of this state that the purchaser acquired no title and that the tax proceedings were void because of jurisdictional defects or failure to obey certain mandatory statutes. *But for* the curative provisions contained in section 24 of chapter 27 or the Laws of Special Session of 1934, [Tax Code cited supra], we would doubtless have gone in accordance with the first part of the statement made by Mr. Cooley, quoted supra. Curative provisions are so far-reaching that we have said that they mean exactly what they say, and there is no way for the delinquent taxpayer who has failed to avail himself of the right of redemption or made payment to overcome such curative provisions.

"Not only did the 1935 Legislature *fail* to say in chapter 133 that the act of the county treasurer in assigning the tax sale certificate during the moratorium period was void, but the earlier statute, which has not been repealed, has in effect said that no court shall say that the failure to obey a mandatory or other statute renders a tax title void. The Legislature has said what considerations or circumstances would make a tax title void and have excluded all others.

"It seems therefore that justice and the rules of construction do not require that we should say that the act of the county treasurer, in assigning this certificate during the time he was told by the Legislature not to do so, was void *absolutely* but was void relatively or conditionally, and that the condition has not arisen for declaring it void. * * *"

We would also note our decision in Scudder v. Hart, 45 N.M. 76, 110 P.2d 536 (1941), being a case involving an alleged fraudulent tax conveyance. We again discussed when conveyances are "void" and when "voidable," and in effect concluded the deed by the county treasurer was voidable. We there said:

"We are next required to consider the meaning of the word 'void' in the phrase, 'If fraud is established, such title shall be void.' In Kyle v. Chaves, 42 N.M. 21, 74 P.2d 1030, we discussed the meaning of the word 'void' at some length, which is summarized in the syllabus as follows: 'The word "void" is not always used in an absolute or in its literal sense but may be and often is used in the sense of "voidable." Where an enactment has relation only to the benefit of particular persons, "void" will be

understood as "voidable" only at the election of the person or persons for whose protection the enactment was made, provided they are capable of protecting themselves. "Absolutely void" is that which the law or nature of things forbids to be enforced at all, and that is "relatively void" which the law condemns as a wrong to individuals and refuses to enforce against them.' "

Compare Waggoner v. Mann, 83 Iowa 17, 48 N.W. 1065 (1891); Terrill v. Auchauer, 14 Ohio St. 80 (1862); White v. Iselin, 26 Minn. 487, 5 N.W. 359 (1880). See also 2 Patton on Titles (2d Ed.) § 486 (1957).

In the posture of this case, we must determine whether in the light of the allegations of fraud on the part of Garcia, which we assume to be true, together with the fact of a conveyance by quitclaim deed for a valuable consideration to the Wilkes, who had no knowledge of the fraud, the State could prevail.

 Under the circumstances here present, Garcia, being guilty of fraud, was the deed a nullity? We are disposed to answer in the negative for two reasons. First, there is nothing on the face of the deeds to disclose that they were reconveyances under § 72–8–31, supra. Two of the deeds recite that the tax sale certificate upon which they were based and the deeds to the State were issued pursuant to the provisions of ch. 27, N.M.S.L.1934, Spec. Sess., and that more than two years had elapsed since the issuance and sale of the certificates. The other deed is purportedly based on tax sale certificates and deed to the state issued pursuant to ch. 160, N.M. S.L.1953, and the passage of more than two years from the date of the sale. None of the deeds state that they were issued pursuant to § 72–8–31, N.M.S.A.1953, which provision was first enacted as § 32, ch. 160, N.M.S.L.1953. Also, the consideration appears to have been $2,750.00 in one deed, $2,000.00 in another, and $62.91 in the third which conveyed only twenty-five acres. Second, even conceding the State's theory and the presence of fraud as claimed, and even if the deed might be cancelled by direct action by the State as to any property remaining in Garcia's name, it is not void, but simply voidable, and there can be no cancellation when there has been a sale to a bona fide purchaser.

Such is the law applicable to patents from the United States. From Wright-Blodgett Company v. United States, 236 U.S. 397, 403, 35 S.Ct. 339, 341, 59 L.Ed. 637, 640, we quote the following:

"* * * Where a patent is obtained by false and fraudulent proofs submitted for the purpose of deceiving the officers of the government, and of thus obtaining public lands without compliance with the requirements of the law, while the patent is not void or subject to collateral attack, it may be directly assailed in a

suit by the government against the parties claiming under it. In such case, the respect due to a patent, the presumption that all the preceding steps required by the law had been observed before its issue, and the immense importance of stability of titles dependent upon these instruments, demand that suit to cancel them should be sustained only by proof which produces conviction. (Citations omitted) And, despite satisfactory proof of fraud in obtaining the patent, as the legal title has passed, bona fide purchase for value is a perfect defense. * * *"

We perceive of no reason for a different rule under the present circumstances. Of course, we recognize that whereas there must be a large degree of confidence and certainty as to land titles acquired from the sovereign by patent, the considerations are somewhat different where property conveyed by tax deed is involved. We note the effect of these differences in our consideration of the next problem—that of whether the Wilkes are bona fide purchasers and therefore not subject to being divested of their interest because of their grantor's fraud, of which they had no notice.

The fact that the Wilkes accepted title by quitclaim deed does not affect their right to claim the status of bona fide purchasers. This has been the rule in New Mexico ever since our decision in Mabie-Lowrey Hardware Co. v. Ross, 26 N.M. 51, 189 P. 42. There can be no question that the grantees in the quitclaim deed from a purchaser from the State of property sold for taxes would take subject to all defects therein of which they knew, or which an examination of the record would disclose. See Procter v. Sagamore Big Game Club, 166 F.Supp. 465 (D.C.W.D.Pa.1958). In Taylor v. Hanchett Oil Co., 37 N.M. 606, 27 P.2d 59, we said:

" 'Knowledge' does not necessarily mean 'actual knowledge,' but means knowledge of such circumstances as would ordinarily lead upon investigation, in the exercise of reasonable diligence which a prudent man ought to exercise, to a knowledge of the actual facts. One who intentionally remains ignorant is chargeable in law with knowledge. In its broadest interpretation it means constructive notice.

"In the case of Kitchen v. Schuster, supra, we adopted the rule governing constructive notice as stated in United States v. Detroit [Timber & Lumber] Co., 200 U.S. 321, 323, 26 S.Ct. 282, 285, 50 L.Ed. 499, 504, where it is said: 'When a person has not actual notice, he ought not to be treated as if he had notice, unless the circumstances are such as enable the court to say, not only that he might have acquired, but also that he ought to have acquired it, but for his gross negligence in the conduct of the

business in question. The question, then, when it is sought to affect a purchaser with constructive notice, is not whether he had the means of obtaining, and might, by prudent caution, have obtained the knowledge in question, but whether not obtaining was an act of gross or culpable negligence.' "

To the same effect is the following language from Sawyer v. Barton, 55 N.M. 479, 485, 236 P.2d 77:

"* * * The true rule * * * is that absent actual notice, where the facts brought to the knowledge of the intending purchaser are such that in the exercise of ordinary care he ought to inquire, but does not, and his failure so to do amounts to gross or culpable negligence, he will be charged with a knowledge of all the facts which the inquiry, pursued with reasonable diligence, would have revealed. Want of ordinary care alone will not charge him. The circumstances must be such that the failure to make the inquiry suggested by ordinary care will convict the intending purchaser of gross or culpable negligence if he is to be visited with all the consequences of having made the purchase with actual knowledge of the facts."

■ While we appreciate that the title received from the State is a new and paramount title in fee simple absolute, Alamogordo Improvement Co. v. Hennessee, 40 N.M. 162, 56 P.2d 1127, we fully recognize that tax titles are commonly subject to attack for failure to comply with statutory procedures in the assessment and collection of taxes, in the sale of properties because of failure to pay taxes, and in the redemption from tax sale. Our legislature has attempted to give a measure of certainty to tax deeds by limiting the time for, and grounds on which they may be attacked (§§ 72–8–20 and 72–8–21, N.M.S.A.1953), and by making tax deeds from the state duly executed by the state tax commission prima facie evidence that all statutory provisions relative to duties of the state tax commission in administration of the property have been complied with (§ 72–8–43, N.M.S.A. 1953). Provisions similar to these, in the nature of a curative statute, have been upheld as valid exercises of legislative power. Cavender v. Phillips, 41 N.M. 235, 67 P.2d 250; Hood v. Bond, 42 N.M. 295, 77 P.2d 180. We do not mention them because of any feeling that the State has acquired any rights thereunder, but for the purpose of demonstrating the weight and consideration to be accorded titles acquired by the State because of nonpayment of taxes, and then by purchase from the State. See Young, "The Tax Deed—Modern Movement Towards Respectability." 34 Rocky Mountain L.R. 181; Waldron, "Merchantable Title by Tax Deeds," 44 Chicago B.R. 67.

■ The deeds from the State were not void. They were voidable for fraud or

other reasons provided in the applicable statutes. See First National Bank in Albuquerque, Trustee, v. State of New Mexico, 77 N.M. 695, 427 P.2d 225, decided this date. We are thus led to our conclusion that a purchaser for value without notice of shortcomings in the proceedings which could be raised by a previous owner under the statutes, or which would become apparent from a reasonable examination of the record, took free from such defect. See Travis v. Johnston, 244 N.C. 713, 95 S.E.2d 94 (1956); White v. Iselin, supra.

■ We note the State's argument that the Wilkes had the burden of establishing they were bona fide purchasers. While we accept this as correct, the proof before the court at the time of the hearing on summary judgment, together with the State's admission that it could prove nothing to the contrary, would certainly establish them as bona fide purchasers for value without notice. It matters not under the circumstances that the burden was theirs. Compare United States v. Peterson (C.A. 10, 1929) 34 F.2d 245.

It follows from what has been said that the court did not err in granting defendants summary judgment. Its action in doing so is affirmed. It is so ordered.

COMPTON and CARMODY, JJ., and HENSLEY, Jr., C J., Court of Appeals, concur.

NOBLE, Justice (dissenting).

In my view, the majority determinations, (1) that the Tax Commission deed, procured by the fraud of the grantee, is voidable only—not void; and (2) that there can be no cancellation of the deed when there has been a sale to a bona fide purchaser, are erroneous. I feel a deed procured under provisions of § 72–8–31, N.M.S.A.1953, by one having no right, title or interest in the property is void, and secondly, a bona fide purchaser from the holder of an invalid tax deed acquires no better title than his grantor.

This appeal comes to us from a summary judgment. Accordingly, the allegations of the complaint are to be considered as true. We must accept as a fact that Elmer N. Garcia fraudulently represented to the State Tax Commission that he was a former owner of the real estate entitled to redeem. The deed from the Tax Commission to him was, therefore, issued pursuant to § 72–8–31, N.M.S.A.1953, the pertinent portion of which reads:

"The person, * * * whose title to or interest in property has been extinguished by the issuance of a tax deed to the state shall have the prior right to repurchase such property.

"For a period of one [1] year after the date any tax deed to the state has been recorded, the state tax commission shall not convey any property acquired by

such tax deed to any person other than one entitled to repurchase the property. * * *"

Trujillo v. Montano, 64 N.M. 259, 327 P.2d 326, is controlling and requires summary judgment in favor of the State. The same statute under which the present deed was issued by the Tax Commission was there construed to mean that a person who was not, in fact, a former owner can acquire no title by a deed issued under the provisions of § 72–8–31, supra, and specifically holds that the grantee of such person likewise acquires no title. I can conceive of no language which could more strongly say that a deed issued within one year of the recording of a tax deed to the State conveying property to one not a former owner is void, and that neither such fraudulent grantee nor a purchaser from him acquires any title to the land so sold by the Tax Commission. This court said:

"We are of opinion, and so hold, that any person who procures a tax deed from the State under the provisions of Section 72–8–31, supra, when he has no right, title or interest in the property, *acquires no title to the land sold.*" (Emphasis added.)

Thus, it is clear that the tax title in the hands of Garcia was invalid. Shackelford v. McGlashan, 27 N.M. 454, 202 P. 690, 23 A.L.R. 75, expressly rejects any theory that a bona fide purchaser from one holding an invalid tax title can acquire a better title than his grantor had. This court there said:

"* * * If the tax title in the hands of the first purchaser is invalid, it gains no validity by transfer to another. The stream of title rises no higher than its source. * * *"

Trujillo v. Montano, supra, likewise expressly denied the bona fide purchaser theory. In that case Senaida Roybal, who had no right, title or interest in the property at the time it was sold to the State for delinquent taxes, made formal application to repurchase the land, just as Garcia did in the instant case. This court said respecting the effect of a deed from her to Montano:

"On January 11, 1949, Senaida Roybal attempted to convey the land in question by warranty deed to the appellant. This deed, of course, is a nullity and has no force or effect. * * *"

I find no support in New Mexico for the position of the majority that the holder of a quitclaim deed is a bona fide purchaser. Metzger v. Ellis, 65 N.M. 347, 337 P.2d 609, is directly contrary and controls on that question. We there said:

"* * * In any event, the deed being, as stated, in the nature of a quitclaim deed, it is well settled that the same conveys only such title, if any, as the grantor had. Conversely, a quitclaim deed conveys nothing if the grantor him-

self did not have title or an interest in the property. Annotation, 162 A.L.R. 556, 562."

Under the clear interpretation of the pertinent statute, Garcia had no title to the property, and his quitclaim deed to Wilkes conveyed nothing. I am unable to find in Mabie-Lowrey Hardware Co. v. Ross, 26 N.M. 51, 189 P. 42, relied upon by the majority, any support for the statement that a quitclaim deed holder is a bona fide purchaser. That case only stands for the proposition that the purchaser had a right to rely on the notice of recording statutes. That question is not before us here. See, 3 Pomeroy, Equity Jurisprudence, § 753c, p. 51; Annot., 51 A.L.R. 632 at 641.

Both Kyle v. Chaves, 42 N.M. 21, 74 P.2d 1030, and Scudder v. Hart, 45 N.M. 76, 110 P.2d 536, heavily relied upon by the majority to support the theory that the deed from the Tax Commission, procured by Garcia's fraud, is only voidable as distinguished from being void, was decided on the construction of different statutes and under entirely different facts. Both are clearly distinguishable. In Kyle, the controversy was between the grantee of a tax deed, issued prior to expiration of the period within which taxes might have been paid, and the former owner who had made no effort to pay within the extended period granted by the 1933 Tax Moratorium Act. There, it was said this Act was enacted for the landowner's benefit and that if he failed to take advantage of the statute enacted for his benefit, he could not attack the validity of a·deed issued contrary to the provisions of that statute. The deed issued prior to expiration of the extended period, under those circumstances, was said to be voidable rather than void. The reasoning of this court in Kyle was stated thus:

"* * * The defendants * * * fall within the class of a delinquent taxpayer whose property had been sold in the process of collecting these delinquent taxes and had never performed any of the conditions provided by the Legislature for their relief, we ought not to say that the action of a county treasurer in failing to heed the admonition of the Legislature for the taxpayer's benefit was absolutely void but only void upon condition that the taxpayer should avail himself of the protection afforded; * * *."

Scudder v. Hart, supra, is likewise wholly inapplicable. A tax deed issued without the statutory notice to a mortgagee was held not to divest him of his lien. The deed was said there to pass title subject to the lien of the mortgage. In the instant case, no' rights of a former owner who failed to take advantage of statutes enacted for his benefit are involved. In Kyle and Scudder, the tax deeds were said to be only voidable because the former owner had both the power to avoid the tax sale and the

power to validate it. In Kyle, the former owner could have avoided the deed by payment within the statutory period or validate it by failure to pay the taxes. The State, in this case, could not validate the deed as it was only authorized to issue to a former owner.

In my view, the deed issued to Garcia upon his fraudulent representations was void and it gained no validity by his transfer to Wilkes. I, therefore, dissent.