125 P.2d 327

**JENKINS v. HUNTSINGER et al.**

No. 4647.

Supreme Court of New Mexico.

March 16, 1942.

Rehearing Denied May 15, 1942.

A. H. Hudspeth and John E. Hall, both of Carrizozo, for appellant.

Reed Holloman, of Santa Fe, and R. M. Krannawitter, of Vaughn, for appellees.

MABRY, Justice.

There is involved in this appeal the title to an undivided one half interest in a section of grazing land in Lincoln County. While there are a number of errors assigned by appellant, the principal contention revolves about the question of the effect of a deed given by a married man to community property in which the wife did not join, and involves an interpretation of Chap. 84, Laws of 1915, Sec. 68-403, Comp.St.1929.

One George Roberts, a married man, attempted to sell and convey to one J. R. Jenkins, appellant, by warranty deed, the land in question for a consideration of $900, one half in cash, the balance secured by a mortgage on the land; thereafter and a short time after his wife had been granted a de-cree of divorce from him, the said Roberts' demanded of appellant and received payment of the balance of the purchase price of the said land.

Appellant Jenkins took possession of the land under the said deed from George Roberts on June 8, 1929, and remained in possession continuously until the date of the trial of this case.

In the divorce suit filed by the wife of the said Roberts on June 12, 1929, she claimed, and was awarded, a one half interest in the land, theretofore conveyed by Roberts, alone, as community property. The said Roberts prosecuted an appeal from the judgment so awarding his former wife such one half interest, and that judgment was affirmed by this court. Roberts v. Roberts, 1931, 35 N.M. 593, 4 P.2d 920.

Suit in partition of said community realty was thereafter brought by Mrs. Roberts, under the name of Nannie J. Stone, against her former husband. Appellant Jenkins, having now been ousted of the wife's portion of the land, thereafter and in July, 1932, filed suit upon the covenants of warranty of his deed to the land, suing in attachment, attaching other lands of the husband, Roberts. Plaintiff (Jenkins) in said suit sought a recovery for one half of the purchase price of the said land, because of his ouster from an undivided one half interest in the premises by the said Nannie Stone Roberts. Lands of the said Roberts situated in Torrance County were attached in said suit.

Appellee A. E. Huntsinger, claiming to be the owner of the attached lands situated in

Torrance County, under a deed from Roberts alone, of a date prior to the attachment suit, but unrecorded, intervened in said attachment suit; defendant Roberts did not appear and judgment by default was entered against him.

Intervenor Huntsinger, in the attachment suit (appellee here), in addition to alleging ownership of the attached land, alleged that the deed from Roberts to appellant Jenkins was wholly void and without effect, on the ground that Roberts' wife had not joined in the conveyance as required by Chap. 84, Laws of 1915.

The issue of what title, if any, was conveyed by the sole deed of Roberts to Jenkins in 1929 was thus first raised and litigated in this suit in attachment, in which appellee Huntsinger appeared as intervenor. Appellant Jenkins in the attachment suit relied upon failure of warranty. He recovered damages and the land was ordered sold to satisfy the judgment. Then, in the subsequent suit from which this appeal arose, appellant urged that, although the property conveyed in June of 1929 by the sole deed of Roberts was then community property, that, nevertheless, the covenants of warranty contained in said deed "had the effect of transferring from said George Roberts to plaintiff all his title *after* the entry of the decree of divorce and division of community property" in Mrs. Roberts' suit aforementioned, and also that it "estopped the said George Roberts and his assigns from denying such transfer." The question was decided against this appellant's contention.

The said George Roberts thereafter, on March 25, 1935, executed a quitclaim deed to appellee for the entire section of land located in Lincoln County, which he had theretofore endeavored to convey by his sole deed to appellant Jenkins, and the suit at bar to quiet title was brought by appellant to remove the deed made to appellee Huntsinger as a cloud upon his title. Intervenor Huntsinger prevailed in the lower court and Jenkins prosecutes this appeal. The former wife of Roberts thereafter and on May 2, 1935, conveyed her undivided one half interest in the section of land in Lincoln County to appellant, and she has no interest in this litigation.

Disposition of this case can be made without considering all the many and intricate angles which this litigation, involving three separate suits, between some of the parties, at least, or touching the property in question, presents. The one principal point presented by this appeal, and now to be considered and decided, determines the rights of all parties herein. The point has to do with the effect of a deed of conveyance to community property, under the circumstances here presented, executed by a married man in which his wife did not join.

Appellant Jenkins relies upon an interpretation of the statute which would, under the circumstances of the case, make the Roberts deed "voidable" only and not wholly void and of no effect, and urges that the circumstances by which Roberts subsequently acquired his one-half of the section of land as his separate estate through the divorce action, and notice to Huntsinger of

171

all the facts, should, and would, through relation back, give validity to the Roberts deed of 1929.

Appellee Huntsinger relies upon the invalidity and ineffectiveness from its inception of the deed from Roberts alone to appellant Jenkins in 1929, to convey title.

Chapter 84, Laws of 1915 (section 68-403, Comp.St. of 1929), as amended by Chapter 84, Laws of 1927, provides: "The husband has the management and control of the personal property of the community, and during coverture the husband shall have the sole power of disposition of the personal property of the community, other than testamentary, as he has of his separate estate; but the husband and wife must join in all deeds and mortgages affecting real estate; Provided, that either husband or wife may convey or mortgage separate property without the other joining in such conveyance or mortgage; and, Provided, further, that any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone shall be void and of no effect, except, that the husband may convey directly to the wife or the wife to the husband without the other joining in the conveyance."

It is clear that when the deed from Roberts to the land in question was executed and delivered he was married, that the land was community property, and that the wife did not join. We have simply the question of determining the effect of an attempted conveyance in view of the controlling statute and under the present circumstances. It becomes largely a question of defining the meaning of the language of the act which provides for joinder of husband and wife and concludes with the warning "that any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone shall be void and of no effect." Appellant contends for an interpretation of the word "void" as being synonomous with the word "voidable."

It may be conceded that the word "void", especially when standing alone and unamplified or explained, under many circumstances, has been held to mean "voidable" only. The language as here employed by the legislature, however, seems to us to fairly bear but one interpretation; and that is that any such deed is of no effect for any purpose, and therefore, a nullity. Other language of the statute, we believe, clearly supports this view. It is provided that any such transfer or conveyance "attempted to be made", etc., shall be "void and of no effect." The legislature was not disposed to rest upon the possible uncertainty of interpretation of the word "void." And, to strengthen the language it would appear, it added the phrase "and of no effect." And if this were not enough to evince a legislative intention of enjoining upon both spouses the absolute necessity of a common agreement and joinder by deed in alienation of all community real property, we should be able to find in the phrase "attempted to be made" additional support for this interpretation. That is to say, the legislature does not dignify the effort at alienation under the circumstances it had condemned as illegal and inefficacious, with the term "conveyance

*made"*, but uses instead the term "conveyance *attempted* to be made." (Emphasis ours.) But, still another more convincing fact is to be found in the position of the concluding clause of this statute, as hereinafter to be noticed.

The following New Mexico cases have touched upon this statute, though in none of them, appellant contends, and perhaps correctly, were we called upon to decide directly and specifically the question here presented—that is, whether a conveyance made in violation of the statute could not, nevertheless, under such circumstances as here presented, be held *voidable* merely, rather than *wholly void*. Adams v. Blumenshine, 27 N. M. 643, 204 P. 66, 20 A.L.R. 369; Terry v. Humphreys, 27 N.M. 564, 203 P. 539; El Paso Cattle Loan Co. v. Stephens & Gardner, 30 N.M. 154, 228 P. 1076; Conley v. Davidson, 35 N.M. 173, 291 P. 489; Fidel v. Venner, 35 N.M. 45, 289 P. 803.

We said in the case of Gross, Kelly & Co. v. Bibo, 19 N.M. 495, 145 P. 480, 484, in which we were considering the use of the unamplified word "void", used in a composition agreement involving several parties, that whether "voidable" was meant, when the word "void" was actually used, should be determined, in construing the instrument then before the court, in the light of the "whole of the language of the instrument and the manifest purpose it was framed to accomplish." We recognize that as a correct statement of the principles of the law there being applied.

We also pointed out in Kyle v. Chaves, 42 N.M. 21, 74 P.2d 1030, 1035, where we were

dealing with a statutory definition, and likewise with the unamplified word "void", that many situations would call for giving the word "void" the definition of "voidable". And with the language there used we likewise have no quarrel. We were re-stating a sound, and almost axiomatic, principle. But, may what was said in these cases afford appellant any comfort? We have before us now something quite different, appellee urges.

But, before leaving the Kyle case it might be well to point out that Mr. Justice Zinn, the author of that opinion, cautiously observes: "The case for 'voidable' is stronger where the statute has *not* said that the failure to observe a legislative direction or mandate renders *the action void."* (Emphasis ours.) This cautionary language reads as though the author of that opinion had in mind this very statute which we are now considering. In any event, language could not have been more aptly chosen. Here the legislature has said that "the failure to observe a legislative direction or mandate renders the action void." Moreover, it renders it of "no effect." When we consider the questions there being considered and the restricted application which may properly be made of the decisions in either of these cases, we may see that nothing was said, or indicated even, which could be said to be in conflict with what we here propose to hold.

In Childs v. Reed, 34 Idaho 450, 202 P. 685, 687, the court holds that no subsequent consent of wife and no subsequent execution of a deed by her, will cure the defect in-

herent from its inception in a deed to community property not signed by the wife. The deed is "absolutely void", the court holds, if not signed by both husband and wife. "The element of mutuality in such a case must exist from the inception of the contract," the court said. The Idaho statute (C.S. § 4666) provides: "The husband has the management and control of the community property, except the earnings of the wife for her personal services and the rents and profits of her separate estate. But he cannot sell, convey or encumber the community real estate unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or encumbered."

In Elliott v. Craig, 45 Idaho 15, 260 P. 433, 434, the court said that under the above-mentioned statute (much less emphatic than our own), "this court, in construing the above statute, has repeatedly held that a contract to convey community property, unless the wife joins with the husband in executing and acknowledging the same, is *absolutely void,* and this has become the fixed and settled law in this state." (Emphasis ours.)

It was stated in McKinney v. Merritt, 35 Idaho 600, 208 P. 244, that under the statutes of that state then in force "a sale or encumbrance of community property could be made only in the manner as the homestead or community real estate occupied as a residence could formally be conveyed." We have much the same situation under our statute, Chapter 84, Laws of 1915, which enlarged upon the restriction against alienation by the husband, and then fortified the prohibition as heretofore shown, with additional clear language not found in other cases we have examined. See, also, Wits-Keets-Poo v. Rowton, 28 Idaho 193, 152 P. 1064.

In the case of Pipkin v. Williams, 57 Ark. 242, 21 S.W. 433, 435, 38 Am.St.Rep. 241, the court held that the statute meant what it said in using the language that any attempt to convey the homestead is "of any [no] validity", and that anyone might question the title so attempted to be conveyed, though all heirs and persons directly interested did not question it and preferred to treat the alleged conveyance as good; and, it was there said that "The decided weight of authority is that such deeds are void absolutely, not relatively; that they are mere nullities, and leave the property as if they had not been made."

Whelan v. Adams, 44 Okl. 696, 145 P. 1158, L.R.A.1915D, 551, holds that a statute providing that when the wife abandons the husband and no longer lives with him for a certain period, he may convey the homestead without being joined in the conveyance by her, is repugnant to the state constitution which provides that alienation may be effected only by the joint consent of the husband and wife. The court in that case pointed out that the constitution fixed the status of the homestead right and that alienation must follow the exact method the constitution provided. The court there also cited Maloy et ux. v. Wm. Cameron & Co., 29 Okl. 763, 119 P. 587, to the same effect—that a statute providing

that only the spouse not joining in the execution of the instrument of conveyance could avoid it, that the deed was relatively void, only, was likewise unconstitutional. "No alienation of the homestead by the husband alone, in whatever way it may be effected, is of any validity; nothing that he can do or suffer to be done can cast a cloud upon the title; it remains absolutely free from all grants and incumbrances, except those mentioned in the Constitution," appropriately remarked the court in the former case [44 Okl. 696, 145 P. 1160, L. R.A.1915D, 551.]

The question of whether such conveyance, without the joinder of the wife, was voidable only and not absolutely void was likewise decided in a later Oklahoma case, that of Fetterman v. Franklin et al., 88 Okl. 1, 211 P. 403, where it was shown that the contention of one of the parties to the suit to the effect that the contract to so convey was only voidable was wholly repudiated by that court in the earlier case of Whelan v. Adams, supra.

In line with the general tenor of the many decisions on the question of alienation where joinder of husband and wife is required, as it affects the homestead, the California court in Hart v. Church et al. 126 Cal. 471, 58 P. 910, 912, 59 P. 296, 77 Am.St.Rep. 195, in holding the attempt of the one spouse to effect a conveyance was "absolutely void" and not voidable merely, had this to say: "Clearly, the execution and acknowledgement by the wife alone of a mortgage upon the homestead were the *merest nullity.* Nor did the fact that the husband five months thereafter wrote upon the mortgage paper a statement that he joined and concurred therein, and signed and acknowledged this declaration, add any validity to an instrument, which at the time when it was drawn, signed, acknowledged, and delivered by the wife was nothing more than her *own futile and abortive attempt* to incumber the homestead." (Emphasis ours.)

It is true that California, since it holds contrary to New Mexico's holding of a present vested right (Beals v. Ares, 25 N.M. 459, 185 P. 780), that the wife has only a "mere expectancy" in the community property, and no vested right as of the present (Spreckels v. Spreckels, 116 Cal. 339, 48 P. 228, 36 L.R.A. 497, 58 Am.St. Rep. 170, and subsequent cases), has adopted a wholly different theory as it applies to community property and the right of the husband to convey alone. See also McDonald v. Lambert, 43 N.M. 27, 85 P.2d 78, 120 A.L.R. 250, where we point out the distinction in the rule. The California cases can, therefore, be of no aid upon the exact question as it involves community property, but what is said in the foregoing kindred and leading case as to alienation of the homestead of the spouses is in line with the almost universal holding.

An attempt by the husband alone to alienate the homestead under a statute, Civ.Code Cal. § 1242, which provided that such homestead "cannot be conveyed or encumbered unless the instrument * * * is * * * acknowledged by both husband and wife," is a nullity and that any

attempt by the husband alone to alienate it "is void from its inception," and is of no avail that the homestead be afterward abandoned. Gleason et al. v. Spray, 81 Cal. 217, 22 P. 551, 15 Am.St.Rep. 47.

Such a deed by the husband alone is "void for all purposes from its inception", under a statute which provides the husband and wife "shall join" in the conveyance. Hall v. Powell, 8 Okl. 276, 57 P. 168, 170.

Under a statute, providing that "no mortgage or other alienation by a married man of his homestead, exempt by law from execution * * * without his wife's consent, evidenced by her act of joining in the deed, mortgage or other conveyance, shall be valid or of any effect", it was held in Rosenthal v. Pleck, 166 Wis. 598, 166 N.W. 445, that not only was such a sole conveyance "absolutely void" but also that it cannot be made the subject of specific performance as to any interest of the husband or for damages.

We think the contention of appellant, ably argued and strongly urged upon us here, to the effect that after all, the husband's interest in the property in question should be subjected to the operation of his sole deed as a conveyance, now that this status as a married man has become changed by the divorce granted his wife, is well answered by the court of our sister state of Arizona in Rundle v. Winters, 38 Ariz. 239, 298 P. 929, 933. A like contention was there unsuccessfully maintained. There it was unsuccessfully urged that the contract to convey was a valid contract so far as the interest of the husband was concerned, and that "at some later date, in case the community is dissolved by death or otherwise, he would have a separate estate against which it might be enforced." The court was not greatly intrigued by the argument, as, indeed, we are not. It pointed out that the attempted conveyance was "void and not merely suspended in its operation so far as the realty itself is concerned." Continuing, Mr. Justice Lockwood, the author of the opinion, states "The statute does not say that the right of either spouse to incumber community realty shall be *suspended* during the continuance of the community, but that they shall not incumber it. The judgment of the court, it will be noticed, in no way determined whether or not the making of the contract between Reno W. Winters and defendant Rundle created any rights as between them, but merely that it was *of no effect* as against the property." (Emphasis ours.)

It should be noticed also that the Arizona court was dealing with a statute much less emphatic than our own. The statute there provided only that "No conveyance, transfer, mortgage or incumbrance of any real estate which is the common property of husband and wife * * * *shall be valid* unless such conveyance * * * shall be executed and acknowledged by both the husband and wife." Civ.Code1913, par. 2061.

"The words 'of no effect' must be construed to mean 'no effect for any purpose.' "

Commonwealth v. Connell, 277 Pa. 154, 120 A. 780, 781.

"The phrase 'of no effect' is synonymous with 'void' and not with 'voidable.'" Mayor and Aldermen of Jersey City v. Davis, 80 N.J.L. 609, 76 A. 969. See also Tarangioli v. Raphael, 158 A. 95, 10 N.J.Misc. 171.

■ Reformation of an instrument of conveyance may not be had under circumstances such as these where the deed was not, in the first place, "in substantial compliance with statutory requirement." O'Malley v. Ruddy et al., 79 Wis. 147, 48 N.W. 116, 24 Am.St.Rep. 702. The Wisconsin act under consideration in the above case makes the signature of the wife to the mortgage of the homestead essential. It says: "No mortgage or other alienation * * * shall be valid or of any effect * * * without the signature of [the] wife to the same." Rev.St.Wis.1878, § 2203. In the above case the wife came into court and consented to a correction of the deed to allow the inclusion of the homestead, omitted, she claims, by mistake. The court held that the only way she could effect this result would be to execute a new mortgage or conveyance. See also Whelan v. Adams, 44 Okl. 696, 145 P. 1158, L.R.A. 1915D, 551; Standard Savings & Loan Ass'n v. Acton, 178 Okl. 400, 63 P.2d 15, 16; Hart v. Church et al., 126 Cal. 471, 58 P. 910, 59 P. 296, 77 Am.St.Rep. 195; Seiffert & Wiese Lumber Co. v. Hartwell et al., 94 Iowa 576, 63 N.W. 333, 58 Am.St. Rep. 413; Martin v. Harrington et al., 73 Vt. 193, 50 A. 1074, 87 Am.St.Rep. 704, upon the question of the absolute invalidity of deeds of conveyance in which both spouses do not join, under constitutional or statutory provision similar to our own, and holding generally that such void and invalid deeds or instruments of conveyance were not, in these cases, cured by subsequent consent, ratification, estoppel, etc. Conveyances affecting homesteads were generally involved in the foregoing cases, but clearly, the same rule would apply in the case of community property under a statute like our own. A clear legislative purpose may be seen in both circumstances.

■ The courts have been quite uniformly strict in applying the constitutional and statutory rules that both husband and wife, under requirements even less strict than those of our statutes, must join or the instrument is absolutely void and no conveyance is thereby effected. It is even generally held that, where the law provides that the conveyance shall be by a single written instrument, executed and acknowledged personally by both husband and wife, separate instruments signed by the spouses separately will not suffice. 26 Am.Jur. 82, Sec. 129.

Many cases could be added to those already cited to the question, particularly upon the homestead rule, which we believe to offer a fair and reasonable analogy as to legislative purpose; but we deem further citation of outside authority upon the point unnecessary. Let us, however, refer again to our particular statute and the decisions of our own court.

In Miera v. Miera, 25 N.M. 299, 181 P. 583, 586, we held in interpreting the statute here in question, that a deed of conveyance signed by one spouse alone was "void and conferred no title." See also El Paso Cattle Loan Co., etc., v. Stephens & Gardner, 30 N.M. 154, 228 P. 1076; Adams v. Blumenshine, 27 N.M. 643, 204 P. 66, 20 A.L.R. 369; Terry v. Humphreys, 27 N.M. 564, 203 P. 539; McKinney v. Merritt, 35 Idaho 600, 208 P. 244; Hughes v. Latour Creek Ry. Co., 30 Idaho 475, 166 P. 219.

We said in the closing paragraph in Terry v. Humphreys, supra [27 N.M. 564, 203 P. 541], something which seems significant, and which indicates that in this, as in all other cases where we have touched upon the question, we obviously always assumed there to be but one possible interpretation of this statute. We were never heretofore called upon to consider that the term "void and of no effect" as used in this statute, could mean "voidable", instead of "having no validity from its inception."

We said in the Terry case: "The question raised by the cross-appellant, Artesia Gas & Oil Company, in his assignment of error that the court erred in finding one-third of the property in question was the separate property of the wife is rendered immaterial by our decision that *joinder by the wife is essential to give validity to an instrument like the one in suit*." (Emphasis ours.)

In the El Paso Cattle Loan Company case, supra [30 N.M. 154, 228 P. 1077], we pointed out that there must be joinder of husband and wife in a mortgage of community real estate and that, in view of the statute, an equitable mortgage could not be declared because "by this statute both the actual and the fictional mortgage are prohibited," when given by the husband alone.

In Terry v. Humphreys, supra, this court, in referring to the history and background of legislative enactments and speaking of the modification of the husband's control over the community property in this state, used language which we believe cannot be improved upon, and we quote: "By the terms of chapter 84, Laws 1915, no transfer or conveyance of the real property of the community could be made without both husband and wife joining, and the control and right of disposition of the husband alone of the real property of the community *was done away with*. As we construe the statute by its *plain terms* at the present time, neither husband nor wife can make a transfer or conveyance of the real property of the community without the other joining in such conveyance or transfer, and if such transfer or conveyance is attempted of such real property of the community by either husband or wife alone, such transfer or conveyance is *void, and of no effect*." (Emphasis ours.)

Thus it will be seen that we have heretofore said that the old practice of allowing the husband to alienate by deed the community real property has been "done away with". Our court in that case found no great difficulty in appraising the statute as one of "plain terms".

If the practice of single alienation by one spouse has been "done away with" it must not exist any more. Hence, any effort to breathe life into an instrument for which there was never any authority for its making, and the attempted execution of which the "plain terms" of the statute condemns in advance as a nullity, and completely ineffective, ought to be, as it is, wholly unavailing.

The legislature of 1915 was not satisfied with the language employed in an earlier but subsequently repealed statute (Chap. 62, Laws 1901) which provided that "neither husband nor wife shall convey, * * * incumber or dispose of" any real property of the community, "unless both join in the execution thereof." § 6. Nor, with the language employed in the statute (now to be amended) restraining alienation of the homestead which could not be affected "without the written consent of the wife." Chap. 37, Laws 1907, § 16; Sec. 2766, N.M. Statutes Ann.1915.

Perhaps it would have been sufficient to stop with the language, "but the husband and wife must join in all deeds and mortgages affecting real estate", Laws 1915, c. 84, § 1, except for concern over future interpretation and the possibility of reliance upon the term "void" as meaning only "voidable" as here attempted, and which may often be done (Kyle v. Chaves, 42 N. M. 21, 74 P.2d 1030) to defeat the purpose the law-makers must have had in mind. So, after treating, in another and separated sentence, the right of either spouse to convey or mortgage separate property without the other joining, we find the legislature coming back to the subject of alienation of community real property with the significant closing paragraph. Such repetition could serve no particular purpose, in view of what had gone before, unless it were desired to foreclose all possible doubt as to the purpose and intention of the law-makers. The closing paragraph, prefaced with the "and, provided further" clause with which we are now familiar, must be considered as most significant. Thus, this legislation was something more than a mere enlargement upon the restriction as to alienation imposed upon the husband as to the homestead of the spouses. The law-makers were not content to rest with an employment of the exact or similar language in the new enactment, extended now to cover *all* property of the community, but it added the clearer and more potent term, "shall be void and of no effect."

Obviously, when the legislature had come now to a recognition of what had been so often asserted by many, that the interest of the wife being more than a "mere expectancy" and having a real present interest in the property of the community, she should have an equal voice in the matter of its alienation; and public policy would dictate some such safeguards to any *attempt* to alienate without her joinder.

Ample reason can be readily found in support of a rule that would, under the theory upon which our community property law is administered, thus surely and effec-

tively safeguard the wife's interest. She, an equal shareholder, and yet, with no voice in management of the property, should not be subjected to the hazards of alienation by the husband alone, where consent, waiver, or other like defenses to her claim might ordinarily be successfully asserted. The act, in other words, makes of the effort by the husband alone an "abortive attempt" and the "merest nullity". Hart v. Church, supra.

We are thus called upon to interpret language which seems to us could bear but one meaning, when we examine the statute in the light of the whole, and "the manifest purpose it was framed to accomplish." Gross, Kelly & Co. v. Bibo, supra. We have before us more than a word. We have more than a phrase; and, we have even more than the two separate phrases. We have, to fortify us in according the plain and simple definition to the language, other significant circumstances relating to the position of the phrases in the statute, and the change from the less positive to the more certain the language used in earlier statutes.

If the deed which Roberts attempted to execute as a conveyance in which his wife did not join, is void and of no effect, as the statute provides, it does not become important to a decision of this case whether other error assigned and relied upon by appellant is well taken. For example, a void deed, one absolutely ineffectual to convey title and which is entirely without effect as an instrument of conveyance, cannot be made valid by such circumstances as are relied upon by appellant.

To have retained part of the purchase price paid at the time of the attempted conveyance, or to have collected upon the note given for the remainder thereof after his divorce from his wife and when he no longer would be required to secure the signature of a wife to a conveyance of his portion of the community property, does not change the situation to defeat appellee's title.

Also, the point whether, in any event, appellant Jenkins is not barred from recovery in this present suit to quiet title, because of the clear position he took in the attachment suit where he sought and recovered judgment for breach of the covenants of ownership and warranty contained in his deed from Roberts in 1929, presents an interesting question; but it does not become necessary for us to decide whether he is thus barred by res adjudicata, or election of remedy, in view of our disposition of the other and principal question, to the effect that the deed upon which appellant relies conveyed no title, in any event.

Appellant cannot rely upon the conduct on the part of Roberts or others which would support the theory of what appellant says was a "second delivery" of the deed; that is, a delivery considered as having been made after the impediment presented by the marital relation had been removed by divorce and when he apparently wanted to convey title.

When we hold, as we do, that the attempted conveyance was from the begin-

ning "void and of no effect", we have nothing upon which to base support for any of the other considerations so ably and fully presented by counsel for appellant. We start with nothing, and we wind up with nothing, so far as we may predicate a conveyance upon the attempted deed of June 8, 1929.

■ Appellee appropriately points out that the remedy is against the maker under the covenants contained in this Roberts deed for breach of contract and failure of the warranties, as, indeed, appellant himself must have sensed, since he moved, in an earlier suit, to assert, and successfully asserted, such remedy. We have held that may be done. Conley v. Davidson, 35 N.M. 173, 291 P. 489.

Finding no error, the judgment is affirmed, and it is so ordered.

BRICE, C. J., and ZINN and SADLER, JJ., concur.

BICKLEY, Justice (dissenting).

The majority opinion results in injustice and the conclusion arrived at disregards the issue of estoppel and certain principles of equity which should lead to a different result, and therefore I dissent.

In order to better present my views, I will restate some of the essential facts in sequence.

Roberts on the 8th of June, 1929 (his wife not joining in the conveyance), attempted to convey community real estate to Jenkins, the appellant. The instrument in writing employed by Roberts was in due form, signed and acknowledged, and was recorded on July 19, 1929. It was designated "Warranty Deed" and contained the usual covenants of seizin, of good right to convey, for quiet enjoyment, and a covenant of general warranty.

The consideration for the conveyance was $900; one half cash, the balance secured by a mortgage on the land.

Jenkins, the grantee, was by the grantor Roberts on the same day, placed in possession of the land and he remained in possession thereof, continuously until the day of the trial of the cause.

About nine months later, on March 19, 1930, a decree of divorce was granted to the wife of Roberts, which decree awarded to her an undivided one-half of the land involved.

Thereafter on July 13, 1930, Roberts demanded of Jenkins the payment of the balance of the purchase price which sum was paid to him by Jenkins on August 22, 1930.

Afterwards, on May 2, 1933, Nannie J. Roberts, the divorced wife of George Roberts, conveyed by warranty deed her undivided one-half of the land to Jenkins.

Jenkins sued Roberts on the covenants of his attempted conveyance to Jenkins and recovered judgment for $450, which is equivalent to the amount Jenkins paid to Mrs. Roberts for her one-half of the land.

This left Jenkins out of pocket $450 which he had paid to George Roberts, and which the said Roberts never paid or offered to pay.

Notwithstanding the retention by George Roberts of this $450, he on the 22d day of March, 1935, executed and delivered to Huntsinger (the appellee) a quitclaim deed to the land involved.

It is charged by plaintiff and it seems to be conceded that Huntsinger had personal knowledge of the foregoing facts at the time he accepted the quitclaim deed from Roberts. He had record notice of the material facts.

The divorced wife of Roberts claims no interest in the land and her rights are not here involved.

Upon this state of facts, the question is whether appellant Jenkins or appellee Huntsinger is entitled to the undivided one-half of the land awarded to Jenkins in the divorce decree.

As to whether the deed executed by George Roberts and delivered to Jenkins along with the possession of the land, served to convey or transfer an interest in the land described in such attempted conveyance in praesenti, I leave to one side. For the purpose of the discussion, I assume that said instrument was ineffectual or in other words, was "of no effect" as a conveyance of the land in praesenti.

Does it follow that the written instrument designated a warranty deed and every part thereof including the covenants of warranty, of seisin, and of quiet enjoyment therein contained are likewise of no effect, even as foundation for working an estoppel?

It is this question of estoppel to which I address my discussion since according to my view it settles the controversy.

It is said by an eminent text writer:

" 'The covenant of warranty is a personal one. * * * It is a covenant that runs with the estate with reference to which it is made, and may be availed of as such, in his own name, by any one to whom the same shall come by deed, even after successive conveyances or a descent or devise.' " 3 Washburn Real Property 399, quoted by the Supreme Court of Texas in Flanniken v. Neal, 67 Tex. 629, 4 S.W. 212, 214.

The Court also said: "It is not to be disputed that a deed without warranty may convey all the right, title, and interest of the grantor at the time of its execution as fully as one with warranty". Flanniken v. Neal, supra.

The rule respecting after-acquired property and its basis is thus stated in 8 R.C.L., Deeds, Sec. 110. "As a general rule, when a person conveys land in which he has no interest at the time, but afterwards acquires a title to the same land, he will not be permitted to claim in opposition to his deed, from the grantee, or any person claiming title from the grantee. And where a vendor undertakes to sell a full title for a valuable consideration, when he has less than a fee simple, but afterward acquires the fee, he holds it in trust for his vendee, and will be decreed to convey it to his use. One view is that a conveyance before the grantor has acquired the title operates as

*an agreement to convey,* which, when the title has been subsequently acquired, may be enforced in chancery. Another is that irrespective of courts of equity, it has always been possible to convey subsequently acquired interests by the operation of the principles of estoppel; and another, that the deed works by way of both estoppel and contract, and has effect as an estoppel, without regard to the grantor's liability to a personal action of the covenants, and even if he has obtained discharge in bankruptcy before acquiring the subsequent title. Again, it has been declared that the basis of the doctrine is the warranty; that in very ancient times, before the system of passing title by bargain and sale came into use, it was upon the implied warranty; but that warranty must exist in fact, or be supplied as a fiction; and certainly recitals and covenants may conclude parties and privies, and estop them from denying that the operation of the deed is what it professes to be—a conveyance of the specified title, though it is not in the grantor at the time. But whether the effect is produced by way of estoppel, remitter, or operation of the statute of uses, matters little, since the effect produced in any event is in all respects the same." (Emphasis supplied.)

If we consider the covenant of warranty as equivalent to an agreement to convey, then we come within the doctrine of Conley v. Davidson, 35 N.M. 173, 291 P. 489, which is to the effect that section 68-403, Comp. St.1929, which provides that the husband and wife must join in all deeds and mort-

gages affecting community real estate and that transfers or conveyances thereof attempted to be made by either husband or wife alone shall be void and of no effect, has no application to a suit for damages resulting from breach of husband's agreement to convey community real estate.

We there decided that there is no merit in the contention that if a transfer or conveyance of a husband without his wife's joining, would be void and of no effect, then a contract to make such transfer or conveyance would likewise be void and of no effect.

Again in Potter v. Connor, 38 N.M. 431, 34 P.2d 1086, 1087, the contention was made that since the subject matter of the contract to convey was community property of one of the parties, and his wife, and the wife failed to sign the contract, the said contract was void. Of this contention we said: "There was no merit in the defense that the contract was void and the note without consideration because of the failure of Mrs. Chesher to join as a contracting party." Citing Conley v. Davidson, supra.

Indeed, there is no conflict of view on this proposition, since the majority say in concluding their opinion, "Appellee appropriately points out that the remedy is against the maker under the covenants contained in this Roberts deed for breach of contract and failure of the warranties, as, indeed, appellant himself must have sensed, since he moved, in an earlier suit, to assert,

and successfully asserted, such remedy. We have held that may be done. Conley v. Davidson, 35 N.M. 173, 291 P. 489."

What the majority overlooked is that an injured party is not limited in his remedies to a suit for damages for breach of contract and failure of the warranty.

The modern tendency is to permit the grantee to choose whether to sue on the covenants or to claim the title by estoppel. See Tenn. Law Review, Vol. 14 (1935–1937) page 120, and cases cited.

This view is also supported by the text of Thompson on Real Property (Permanent Edition) Sec. 3845 and cases cited: "The grantor's acquisition of title, even after his grantee has brought suit upon the covenants, has the effect to reduce the damages the grantee can recover; and if such acquisition wholly remedies the defect for which suit was brought, the grantee is entitled to nominal damages only." (Citing cases.)

In 21 C.J., Estoppel, sec. 39, it is said: "If a grantor having no title, a defective title, or an estate less than that which he assumed to grant, conveys with warranty or covenants of like import, and subsequently acquires the title or estate which he purported to convey, or perfects his title, such after-acquired title will inure to the grantee or to his benefit, by way of estoppel."

Note 57(a) to the above text states: "As aptly stated by an early commentator 'the fruit and effect of a warranty in a deed is that it concludes the warrantor, so that all present and future rights that he has or may have in the land, are thereby extinct.' " (Citing)

I believe that the same result would follow if it be considered that the title is merely bottled up in the grantor for the benefit of the grantee, at least in so far as subsequent purchasers of the after-acquired title with notice are concerned.

In Gough v. Center, 57 Wash. 276, 106 P. 774, it was decided: "Both at common law and under Ballinger's Ann. Codes * * * where a person when conveying land by deed has no title and afterwards acquires title, it inures to the conveyee, *though the original deed be void.*"

In the course of the opinion, the court said: "We apprehend a deed is always void, or at least ineffectual, where the grantor has no title at the time of its execution, but this is no objection to the application of the rule that an after-acquired title passes by estoppel. Indeed, the rule could have little or no application if the contention of the appellant is sound."

In Tolliver v. Great Northern Railway Co., 187 F. 795, 797, the Circuit Court of Appeals, Ninth Circuit, said, referring to the Washington statute: "This rule is merely declaratory of the law as it existed previous to and independent of statute."

In Demerse v. Mitchell, 187 Mich. 683, 164 N.W. 97, it was decided: "Where a wife conveyed with warranty land in which she only had an estate by the entirety, and

her husband afterwards devised her all of his rights, her former conveyance carried the after-acquired title."

That the result is the same where the grantor does not have the title and where he does not have the power to convey, see King v. Gilson's Adm'x, 32 Ill. 348, 83 Am.Dec.269. Referring to certain covenants there, as here, involved, the court said: "They are, that the grantor is then seised, and has good right to convey. If he is not well seised, *or if he has not the power to convey,* when the deed is delivered, an action at once accrues, and a recovery may be had."

And also decided: "Nominal damages only can be recovered for breach of the covenants of seisin and of good right to convey, in case the grantor acquires title after suit brought." See also Pelletier v. Langlois, 130 Me. 486, 157 A. 577, where it was held that a ward's warranty deed to property, on reaching majority, to guardian, at once vested ward's interest therein in guardian's transferee under guardian's former warranty deed to same property. And in Tennessee, notwithstanding a champertous conveyance passes no title and is no bar to recovery of the land from the purchasers vendee, such a recovery inures to the purchaser's benefit by way of estoppel. Nance's Lessee v. Thompson, 1 Sneed 321.

There are a number of clauses in deeds which may be independent of each other, not all of which are necessary to the "transfer or conveyance" of real estate. There is the granting clause to which is looked to see what it was intended to convey. Then there is the habendum clause and also there may be the covenants of seizin, of quiet enjoyment and the covenant of warranty. The granting clause is required to transfer title, but the covenant of warranty is not necessary to make a deed effective. For a discussion of this subject, see Porter v. Henderson, 203 Ala. 312, 82 So. 668.

My argument is that our statute under consideration, which I will discuss more in detail later, declaring, "That any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone shall be void and of no effect" does not serve to render void and of no effect the covenants in an instrument in writing, which are independent of the granting clause or words of transfer of the title. See Conley v. Davidson and Potter v. Connor, supra.

In Doe ex dem. Anniston City Land Co. v. Edmondson, 145 Ala. 557, 40 So. 505, it was held that a deed without words of transfer, but describing the land and containing a warranty of title, works an estoppel against the grantor to assert title against the grantee or to defeat an assertion of title by grantee against grantor, and also estops grantor to assert an after-acquired title to the land against the grantee. See also Porter v. Henderson, supra.

Our statute does not destroy or render void and of no effect for every purpose whatsoever every part of the instrument in writing which is evidence of the contract

between the parties. It merely makes void and of no effect the words of transfer employed in such instrument in writing.

There is no virtue in the fact that *the agreement to convey* was written on a separate piece of paper as in Conley v. Davidson and Potter v. Connor, supra. If a legislative enactment may be sustained in part, although certain clauses therein may be void because unconstitutional, I see no reason why a contract in writing containing both an agreement to convey and also words of transfer and conveyance, may not be upheld in so far as the agreement to convey is concerned, even though the granting clause is stricken down because void and of no effect. There is authority to support this view. In Devlin on Deeds, 3d Ed., Sec. 1276, it is said: "Where a deed is only partially void, the part that is good may work an estoppel. So if a husband and wife join in a conveyance, and the conveyance be void as to the wife, it may still bind the husband by estoppel."

The author cites among other cases, United States v. Hodson, 10 Wall. 395-408, 409, 19 L.Ed. 937, which decides: "Where a bond contains conditions, some of which are legal and others illegal, and they are severable and separable, the latter may be disregarded and the former enforced."

The foregoing considerations would seem to be enough to warrant a decision in favor of the appellant.

But because the result attained by the majority casts doubt upon the integrity of our previous decisions in Conley v. David-son and Potter v. Connor, I think it proper to set forth my views of the intention of the legislature in the enactment of sec. 68-403, Comp.St.1929.

I think that if the legislature when it employed the language "void and of no effect" intended the meaning credited to it by the majority, it would have been logical for this court in Conley v. Davidson and Potter v. Connor, supra, to have decided as contended by counsel there, that if the transfer or conveyance of a husband without his wife's joining, would be void and of no effect, then the contract to make such deed would likewise be void and of no effect. The fact that our court repudiated this contention leads me to believe that the court did not consider that the legislature had used the word *void* in the sense sometimes employed, that the transaction is tainted with illegality and contrary to a general public policy and therefore the transaction is void to all intents.

We have already decided that the words void and voidable are often used interchangeably and that: "Indeed, 'void' is so often used in the sense of 'voidable' as to have almost lost its primary meaning." Kyle v. Chaves, 42 N.M. 21, 74 P.2d 1030, 1033.

In that case is an extended discussion of the subject and we quoted liberally from the opinion of Mr. Chief Justice Roberts in Gross, Kelly & Co. v. Bibo, 19 N.M. 495, 145 P. 480, 484. Justice Roberts in turn quoted Judge Cooley as saying: "If it is apparent that an act is *prohibited*

and declared void on grounds of general policy, we must suppose the legislative intent to be that it shall be void to all intents; while, if the manifest intent is to give protection to determine individuals who are sui juris, the purpose is sufficiently accomplished if they are given the liberty of avoiding it." (Emphasis supplied.)

While I refer to other parts of our decision, I adopt the foregoing test by Judge Cooley as my chief guide in construing the statute in question.

Was the legislative purpose to protect husbands and wives in their interest in community real property, or was there some clearly apparent general public policy sought to be served in addition to the protection of the spouses?

The Wisconsin case cited hereafter says that if "voidable" will accomplish the purpose of the statute, it must be assumed that the legislature used the word void in the sense of voidable. That is the same thing that we said in Kyle v. Chaves, supra, and therefore I shall have occasion to refer to this Wisconsin case again.

Our first concern, then, is to discover the purpose of the enactment and whether there is any general public policy involved.

We have already said in at least two cases that the purpose of this statute is for the protection of the interest of the wife in community real estate. In McDaniel v. McDaniel, 36 N.M. 335, 15 P.2d 229, 233, Mr. Justice Sadler, writing for the court concerning this statute, said: "Furthermore, the limitation imposed by this statute on the power of the husband to convey community property is obviously for the wife's protection." Citing Davidson v. Click, 31 N.M. 543, 249 P. 100, 47 A.L.R. 1016.

I assume that it is also for the protection of the husband.

Our decisions, so far as I have been able to find, have not pointed out any other purpose or design of the legislative act than that mentioned in McDaniel v. McDaniel, and Davidson v. Click, supra.

We are brought back, then, to Judge Cooley's test which we have adopted as heretofore seen, and required to examine the statute to see whether it was enacted to serve a general public policy.

This, of course, drives us to the texts and court decisions to determine what is meant by "public policy."

An illustration will suffice: Public policy is "That principle of law which holds that no subject or citizen can lawfully do that which has a tendency to injure the public or against the public good." Ballentine's Law Dictionary.

When we are required to determine whether the legislature used the word "void" as understood in its primary meaning, which has, as we have seen, to have been "almost lost" in usage, or in the sense of "voidable", we get no aid from the form of the use of the word itself as indicating a general public policy, but we must look elsewhere.

The citations in the majority opinion are chiefly of decisions involving the inter-

pretation of statutes imposing restraint upon alienation of homesteads occupied by the husband and wife.

The majority say that the analogy is close and persuasive. I do not think the analogy is either close or persuasive.

There is a "general public policy" discernible in the statutes placing a restraint upon the alienation of homesteads which does not appear with respect to the real property not occupied as a homestead. See Note, Alt v. Banholzer, 39 Minn. 511, 40 N.W. 830, 12 Am.St.Rep. 681, and Waples on Homesteads and Exemption, p. 397.

At this point I call attention again to the decision of the Wisconsin Supreme Court in Good v. Starker, 1934, 216 Wis. 253, 257 N.W. 299. The court decided:

"Whenever from nature of transaction prohibited and purpose of its enactment such legislative intent may be reasonably read into statute, word 'void' will be construed as meaning 'voidable.' * * *

"When whole purpose of statute is effected by giving word 'void' meaning of 'voidable,' and 'public policy' is not involved, word should be given such meaning.

"Term 'public policy' is one of vague and uncertain meaning, but means that principle of law which holds that no subject can lawfully do that which has tendency to be injurious to public or against public good, and whatever contravenes good morals or any established interests of society is against 'public policy.' * * *

"Statute should not be construed as declaring a public policy that would defeat purpose of its enactment, if construction that will effect its purpose can be given."

The court called attention to the fact that: "The statute does not proscribe selling stock of corporations as against public policy. It does not prohibit sales of stock. It only surrounds its sale with certain safeguards."

We might paraphrase this by saying that our statute: "Does not proscribe the conveyance of community real property as against public policy. It does not prohibit the conveyance of community real property. It only surrounds its conveyance with certain safeguards."

Since the purpose of the statute was to prevent frauds upon the nonjoining spouse and this purpose is effected by giving the word "void" meaning of "voidable" we should presume that the legislature intended the latter meaning, and thus prevent the statute from becoming a cloak for frauds.

Turning to cases cited by the majority from community property states not dealing with homesteads, I concede that the decisions of the Idaho Court consistently hold that under the statute of that state a conveyance of community real estate not joined in by the husband and wife, is void in the primary meaning of that word, and not subject to ratification, although I do not find an Idaho decision on estoppel as to situations like the case at bar. They go to the extent of holding that

a written lease for a term of years is a "conveyance" and an "incumbrance" of realty and is void unless wife joins with the husband in execution and acknowledgment thereof. This view is repudiated by our court in Fidel v. Venner, 35 N.M. 45, 289 P. 803. This and other New Mexico decisions hereafter cited show that we have already refused to accept the strict view of the Idaho Courts.

The Courts of California, Arizona and Washington, also community property states, recognize the doctrines of ratifications and estoppel as repelling the view that such statutes restricting the power of alienation of community real property are absolutely void. See Pacific Digest and Decennial Digests, Husband and Wife, ☞ 267. I do not discover that the decisions of the court of Louisiana and Texas are of any value on either side of the controversy.

The majority cite Rundle v. Winters, 38 Ariz. 239, 298 P. 929. It is well to note that this was a suit by a husband and wife asserting the invalidity of a contract for the conveyance of their community real estate, which contract had not been joined in by the wife.

Since the object of the statute is the protection of the owners of the community real property, the decision was logical. But see Cook v. Stevens, 1938, 51 Ariz. 467, 77 P.2d 1100, where the court decided: "If a husband attempts to convey realty without wife joining in conveyance, and wife with knowledge of facts makes no protest and grantee goes into possession of premises under the void conveyance, statute of limitations runs against the wife in the same manner as it does against any other person, and if the grantee remains in possession for the statutory period, both the wife and husband will be barred from action to recover the premises."

And see also Nickerson v. Arizona Consol. Mining Co., 1939, 54 Ariz. 351, 95 P.2d 983, holding: "A widow, estopped to assert interest in mining claims constituting community property as against company to which husband conveyed them, cannot assert such interest as against anyone whose title passed through such company, and its conveyance thereof to third party was good, so as to entitle grantee's successor in interest to judgment quieting his title thereto as against widow, regardless of whether owners subsequent to such company knew that she was married or that recorder's records disclosed defect in her title."

From these late expressions of the Arizona Supreme Court, I believe that by the expression that the conveyance of community property by the husband alone was void, it was meant that the conveyance was voidable at the option of the wife.

Our own decisions, while not settling the exact question here presented, leans away from the Idaho doctrine. See Davidson v. Click and McDaniel v. McDaniel, Fidel v. Venner, supra; Conley v. Davidson, 35 N.M. 173, 291 P. 489; Potter v. Connor, 38 N.M. 431, 34 P.2d 1086.

I think the majority failed also to give proper consideration to the argument of appellants that section 68-401, N.M.Comp. Stats.1929, supports the view that the legislature intended the restriction on alienation contained in Sec. 68-403, Comp.St. 1929, to be voidable instead of void. This section 68-401 was cited by this court in McClendon v. Dean, September 18, 1941, 45 N.M. 496, 117 P.2d 250, on the assumption that it was still in full force and effect. Appellants make the argument that this section throws light upon the proper interpretation to be given the statute now in question in the case at bar, and counsel for appellees completely ignore this argument, and they do not pretend that this statute has been repealed. Notice the language of it. "Whenever any property [real property as construed in McClendon v. Dean] is conveyed to a married woman by an instrument in writing the presumption is that title is thereby vested in her as her separate property."

Now notice a subsequent provision of the same section, "In cases where married women have conveyed or shall hereafter convey, real property which they acquired prior to March 18, 1907, the husband(s), or their heirs or assigns, of such married women, may be barred from commencing or maintaining any action to show that said real property was community property, or to recover said real property, as follows; as to conveyances hereafter made from and after one year from the filing for record in the county clerk's office, of such conveyances respectively." (s) interpolated.

I understand that to mean that if the wife has conveyed community real property by her sole deed, not joined in by her husband, then such deed is not "void" but is voidable at the option of the husband or the heirs or assigns of such husband, provided they bring an action to show that the real property conveyed by the wife alone was community property or to recover said community property and provided further that such action must be brought within one year from the date of filing for record of such deed in the county clerk's office. If the legislature meant that such a conveyance of community property by the wife, without the joinder of her husband in such conveyance would be absolutely void to all intents and purposes, from the beginning, then it would have been absurd to provide that the husband and others mentioned in the statute could bring an action to nullify said deed within one year from the filing thereof in the clerk's office, inferentially saying that if no such action was brought by the husband or heirs, etc., within a year, that such deed would have to stand.

The fact that the husband or his heirs. or assigns, by this section, are barred from questioning the conveyance by the wife alone after one year from the date of the filing of the conveyance in the clerk's office, and no limitation is put upon the time when the wife may bring an action to set aside a deed made by the

husband of the community real property without her joining therein, further indicates a solicitude on the part of the legislature to protect the interest of the wife.

This section (68-401) is the same as section 2764, Code 1915. That last-cited section was derived from Sec. 10, Ch. 37, L.1907.

Section 10 of the New Mexico Act 1907 is almost word for word the same as Sec. 164, Civil Code of California, as it stood when Ch. 37, L.1907, was enacted. See Deering's Civil Code of California, 1915, Sec. 164.

There seems to be a typographical error in our Sec. 10 of Ch. 37, L.1907, in that in the California statute the language is "The husbands, or their heirs or assigns, of such married women, shall be barred from commencing or maintaining any action, etc." Whereas our Sec. 10 of Ch. 37, L.1907, reads: "The husband, or their heirs or assigns, of such married women, may be barred from commencing or maintaining any action," etc. Manifestly in copying, the s was left off of the word "husband" in our statute, and if supplied, the sentence reads with proper effect.

The compilers of the 1915 Code in Sec. 2764 seem to have worked over the limitations of action portion of Sec. 10, Ch. 37, L. '07, but the change does not affect my argument.

I assume that the omission from the 1915 Code section in Sec. 10, Ch. 37, L. '07, of the special limitations period for commencing suit "as to conveyances heretofore made from and after one year from the date of the taking effect of this act" left what was supposed to be some other general statute of limitations to apply as to commencing actions as to conveyances made prior to the passage of the act.

My argument is that since this section has never been repealed, and has not been amended since the 1915 codification, it must be considered in connection with Ch. 84, Laws 1915.

How can it be said the legislature intended to say that where a married woman has conveyed real property which she acquired prior to March 18, 1907, the husband of such married woman or his heirs or assigns may commence an action, within one year from the filing for record in the county clerk's office of the conveyance by the wife for the purpose of showing that the said real property described in the conveyance by the wife was community property, or to recover said real property, if they also meant that the language of Ch. 84, L.1915, "Any transfer or conveyance attempted to be made of the real property of the community by * * * wife alone shall be void and of no effect" was taken to be understood in its primary meaning of absolutely void to all intents from its inception and not subject to ratification or estoppel?

If this language were to be accepted in its primary meaning, the portions of Sec. 68-401, Comp.St.1929, which I have quoted, would be meaningless.

Section 68-302, Comp.St.1929, says: "All property of the wife owned by her before marriage and that acquired afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof is her separate property."

Section 68-401 says that all *other* property acquired after marriage by the wife is community property. Then the same section erects a rule of evidence for her benefit and says that if after her marriage any real property is conveyed to her (acquired by her) by an instrument in writing, the presumption is that title is thereby vested in her as her separate property. Of course, this is disputable presumption. Stafford v. Martinoni, 192 Cal. 724, 221 P. 919.

It must be remembered that the community property law in New Mexico did not originate with Ch. 37, L.1907. See Ch. 62, L.1901; Sec. 2030, C.L.1897; Beals v. Ares, 25 N.M. 459, 185 P. 780; Arnett v. Reade, 220 U.S. 311, 31 S.Ct. 425, 55 L.Ed. 477, 36 L.R.A.,N.S., 1040.

The presumption that wherever real property is conveyed to a married woman by an instrument in writing, it is her separate property, attends conveyances by which she acquires real property under the circumstances mentioned in Sec. 68-302, as well as otherwise. So when Sec. 68-401 says in the limitations of action portion thereof that: "In cases where married women have conveyed or shall hereafter convey, real property which they *acquired* prior to March 18, 1907" the word "acquired" meant acquired in any manner.

If she acquired it after marriage by an instrument in writing, the presumption would aid her in proving that she acquired it in the manner mentioned in Sec. 68-302. If the husband or his heirs or assigns should successfully challenge the wife's claim that the real property conveyed to her by an instrument in writing was acquired by her under the circumstances mentioned in 68-302, then the presumption as well as other evidence produced by the wife would be overcome, and the conclusion would be that the wife had acquired it as community property in accordance with the first sentence of Sec. 68-401, which says that "all other property acquired after marriage by * * * wife * * * is community property."

Let us suppose then that prior to March 18, 1907, a married woman after her marriage acquired real property by virtue of a written conveyance to her. By the provisions of Sec. 68-401 the presumption is that she acquired it as her separate property. Later on she conveys said property to one other than her husband, and the husband does not join in conveyance. Within one year after such conveyance is filed for record the husband may commence an action to show that the property conveyed was in fact acquired by the wife as community property, and that consequently the grantee named in the wife's sole deed or conveyance took nothing because he, the husband, had not joined in the conveyance. If the husband prevails in such a lawsuit, then truly the wife's deed or conveyance is of no effect to ac-

complish her attempted transfer of the community property described in the conveyance, and the plaintiff husband will have the relief demanded in his complaint, which might be to quiet the title to the property or to recover the same for the benefit of the community.

But in the event the husband stands by for more than one year after such a deed by the "wife alone" has attempted to transfer and convey such community property, it will be too late for him to challenge the conveyance. The result will be that the title of the grantee will thereafter be impervious to attack by the husband or his heirs or assigns. The grantee's title will be "good because plaintiff [husband] is estopped from attacking it". See Nickerson v. Arizona Consol. Mining Co., supra.

If the conveyance by the wife alone of such community property was "void and of no effect" to all intents in the sense that those words may be used in their primary meaning (which meaning we have said has been "almost lost"), then there would be no occasion for the legislature by Sec. 68-401 to have recognized the right of the husband to "avoid" the effect of the conveyance of community property by the "wife alone", provided he moved to do so within the time allowed. That which may be avoided is not void. In other words, that which the statute says may be avoided is voidable and not absolutely void to all intents.

The legislature has in Sec. 68-401 plainly said that a conveyance of community property by the wife alone is voidable by the husband or his heirs or assigns—it follows therefore that when in Sec. 68-403 they said such conveyance is void they used the word void in the sense very frequently used as meaning voidable.

A similar question was presented in Rice v. McCarthy, 73 Cal.App. 655, 239 P. 56, 59, in which a similar statute was involved. The court after giving recognition to the rule that estoppel cannot vitalize a transfer which is void because prohibited by law or because it is against public policy, said:

"These considerations lead irresistibly to the conclusion that, so far as the meaning of the words 'such instrument' is concerned, the first and last parts of the section should be read as though the proviso which separates them had been omitted. So read, the section would provide that:

" ' * * * The wife must join with him (the husband) in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed or encumbered; But no action to avoid such instrument shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate.'

"From the foregoing analysis of the section, it will be seen that it fixes a limitation of one year from the recording of an instrument executed by the husband alone, and which is not within the saving

grace of the proviso, within which to bring an action to avoid the husband's instrument. But a statutory provision which prescribes a time limitation within which a wife may bring an action to avoid her husband's instrument of conveyance enwombs the necessary implication that the title passes by the instrument even though the wife did not join with her husband in executing it—that the title passes, but that the instrument which passes it may be invalidated or avoided if the proper action be brought within the prescribed time. In other words, even those instruments which are not under the shield of the proviso are only voidable and are not void. And that is precisely what was said of such instruments in Goodrich v. Turney, 44 Cal. App. 516, 519, 186 P. 806, 807, the court there remarking that if it be assumed that a contract to exchange properties is within the purview of section 172a, 'that does not make the writing absolutely void, but voidable only at the instance of the wife.' The Supreme Court in that case denied a petition for a hearing by it after judgment of the District Court of Appeal. We conclude, therefore that the instrument here sought to be avoided is not void because prohibited by law.

"Nor is there any reason why it should be held that 'public policy,' a term of vague and uncertain meaning, forbids the wife from waiving her right to avoid a transfer of community real property executed solely by her husband. A wife's right to avoid an instrument transferring community real property, or an interest therein, executed by her husband alone, is a privilege in which the state has no interest apart from that of the wife herself. There is no duty, perfect or imperfect, on the part of a wife to contest the validity of her husband's transfer of community real property."

The court went on to say: "We think it equally manifest that the provision in section 172a which recognizes the wife's right to avoid an instrument which is within the purview of that section was intended solely for the wife's benefit, and that she is under no obligation to the state to exercise the right. It is generally held that statutory provisions designed solely for the benefit of individuals may be waived by the persons for whose benefit they are designed. 6 Cal.Jur. p. 120. See In re Garcelon's [Estate], 104 Cal. 570, 38 P. 414, 32 L.R.A. 595, 43 Am.St.Rep. 134, where an agreement between nephews and the testatrix not to contest the latter's will was sustained against the plea that the contract was opposed to public policy. In section 172a the Legislature itself, by allowing the wife the short period of one year from the recording of her husband's instrument of conveyance within which to bring an action to avoid it, evinces an unmistakable intention to regard her right as one to which no special sanctity attaches."

The court also said: "The question, then, is this: May the wife by her conduct estop herself from asserting the right which is given her by section 172a, i. e., the right to avoid her husband's conveyance of community real property in which

she did not join? As a general rule, estoppel cannot vitalize a transfer which is void because prohibited by law or because it is against public policy. In the eye of the law such a transfer has no existence whatever, and neither action nor inaction can validate it or estop a party against asserting its utter invalidity."

I assume that the rights and duties of husband and wife are reciprocal and that if the husband alone conveyed community property, the wife who had not joined in the conveyance, could commence and maintain an action to protect her interests in such community property. A difference is that the wife would not be controlled by the short statute of limitations contained in Sec. 68-401. The statute here in question affects only the power of alienation and the legislative intent may best be carried out by regarding the transfer as good against the husband or wife, making it but voidable at the option of the spouse not joining in the conveyance, and the heirs and assigns of such injured spouse.

It is argued that because in Ch. 84, L. 1915, Sec. 68-403, Comp.St.1929, the word void is followed by the words "and of no effect" and these additional words indicate an intention of the legislature to make the conveyances not executed in accordance with the terms of the statute, absolutely void to all intents and purposes.

The additional words did not add any additional signification to the word void. It was mere tautology.

Ballentine's Law Dictionary has this to say under the word "void": "The words 'to be void and of no effect' are often used in *statutes* and legal documents, such as deeds, leases, bonds, mortgages and others, in the sense of voidable, merely, that is, capable of being avoided, and not as meaning that the act or transaction is absolutely a nullity, as if it never had existed, incapable of giving rise to any rights or obligations under any circumstances. Thus we speak of conveyances void as to creditors, meaning that creditors may avoid them, but not others. Leases which contain a forfeiture of the lessee's estate for nonpayment of rent, or breach of other condition, declare that on the happening of the contingency the demise shall thereupon become null and void, meaning that the forfeiture may be enforced by reentry, at the option of the lessor. A deed obtained by fraud is sometimes said to be void, meaning that the party defrauded may elect to treat it as void. See Ewell v. Daggs, 108 U.S. 143, 149, 2 S.Ct. 408, 27 L.Ed. 682, 684." (Emphasis supplied.)

For other decisions to the same effect, see 44 Words and Phrases, Permanent Edition, p. 358, defining the meaning of the phrase "void and of no effect" when used in *statutes* and elsewhere.

I have already pointed out that the Idaho court is the only one cited which takes the extreme view of the word "void" adopted by the majority.

That court goes so far as to hold that the husband's written contract to convey

community property is void unless the wife joined with husband in executing such contract. See Elliott v. Craig, 45 Idaho 15, 260 P. 433. We were asked to so declare the law in Conley v. Davidson and Potter v. Connor, supra, but declined to do so and on the other hand decided to the contrary.

So that, even conceding as I do that the Roberts deed to Jenkins was void as to Robert's wife and ineffectual *as a conveyance* to transfer the community property in praesenti, the *writing* and all of its terms were not necessarily void.

In accord with the principles announced in Conley v. Davidson and Potter v. Connor, supra, it is my view that appellant had the right to rely upon the covenants of seisin, good right to convey, and the covenant of warranty, and that these covenants serve as the basis not only for a suit for damages by appellant Jenkins, but also as a basis for his claim of title by estoppel, in view of all of the circumstances in this case. It would be different, of course, if the contract, whether in a separate paper or in the same paper with the abortive attempt to convey, was one involving moral turpitude, for no rights can accrue under a contract to do an unlawful or immoral act. Such is not the effect of a contract to sell and convey community property, and such is not the effect of the covenants of seisin, good right to convey, and of warranty, because the covenantor may thereafter acquire the title.

From all of the foregoing, I conclude that the appellant should prevail and that the judgment should be reversed, and therefore I dissent.